Shirley M. RANDALL, M.D.,
Plaintiff–Appellant,

v.

UNITED STATES of America; United States Department of the Army; Donna E. Shalala, Secretary of Health and Human Services; Michael P.W. Stone, Secretary of the Army; Alcide M. Lanoue, General, Surgeon General of the Army; Kevin C. Kiley, Colonel, individually and in his official capacity as Deputy Commander for Clinical Service and Chairman of the Credentials Committee for Womack Army Community Hospital; Elmer M. Casey, Colonel, individually and in his official capacity as Commander of Womack Army Community Hospital; John T. Wilcox, Lieutenant Colonel, in his official capacity; William D. Strampel, Lieutenant Colonel, Chief of the Quality Assurance Division of the Army; Unknown Named Members of the U.S. Army, Defendants–Appellees.

No. 93–1792.

United States Court of Appeals,
Fourth Circuit.

Argued May 12, 1994.
Decided July 26, 1994.

**ARGUED:** Iris McCollum Green, Green & Foushee, Washington, DC, for appellant. Peter Rolf Maier, Civil Division, U.S. Dept. of Justice, Washington, DC, for appellees. **ON BRIEF:** Frank W. Hunger, Asst. Atty. Gen., Douglas J. McCullough, U.S. Atty., Barbara L. Herwig, Civil Div., U.S. Dept. of Justice, Washington, DC, for appellees.

Before CHAPMAN, Senior Circuit Judge, ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation, and KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Senior Judge CHAPMAN wrote the opinion, in which Judge ELLIS and Senior Judge KNAPP joined.

## OPINION

CHAPMAN, Senior Circuit Judge:

Shirley M. Randall, M.D., a former United States Army physician, brought this action against the United States and two of her former supervisors for alleged violations of her constitutional rights associated with limitations placed on her practice while she was an anesthesiologist at the Womack Army Community Hospital ("Womack") at Fort Bragg, North Carolina. The defendants moved for dismissal under Rule 12(b)(6), arguing that Randall had failed to establish

that the Government had violated her constitutional rights and that the individual defendants were qualifiedly immune from suit. The district court granted the Government's motion to dismiss and we affirm.

## I.

Dr. Randall entered the United States Army in June 1984, shortly after her graduation from medical school at the University of Virginia. During her tenure with the Army, Randall was stationed in Heidelberg, Germany, Fort Polk, Louisiana, and Fort Sam Houston, Texas. Randall's supervisors completed numerous evaluations of her work, some good and some bad. The good evaluations stated that Randall's performance was "excellent," "outstanding" and "superior." The bad ones expressed concern over her ability to take direction, to function without supervision, and to react to crisis situations.

Randall arrived at Womack on January 10, 1990. She was given provisional privileges to practice anesthesiology with qualified supervision for a period of 365 days.[1] Army regulations provide that the "[f]ailure to attain and retain required proficiency levels for defined privileges by the end of the provisional period will require an evaluation as to whether revocation or permanent restriction of privileges is appropriate." Army Regulation ("AR") 40–68 4–2(a)(4)(b). The Army may restrict a doctor's privileges based upon reasonable cause to doubt his or her competence to practice or for any other cause affecting patient safety. AR 40–68, 4–9(a). Reasonable cause includes a single act of gross negligence or a pattern of substandard care. AR 40–68, 4–9(a)(1), (3).

Over the course of 1990, Randall demonstrated numerous instances of poor judgment, including leaving a patient during the course of a medical procedure when the patient's anesthesia was wearing off, and failing to have a patient's blood typed or to call for additional blood as the patient was losing blood during the course of a procedure. On December 9, 1990, Randall received notice that the Womack credentials committee would conduct a hearing concerning allegations that she was not qualified to practice as an independent anesthesiologist.

On January 8, 1991, the credentials committee met to evaluate Dr. Randall's performance while at Womack and to consider an adverse privileging action against her. Dr. Randall and her attorney were present at the hearing, where she called and questioned witnesses, and presented evidence to rebut the allegations of substandard care and deficient knowledge. The credential committee elected to continue Randall's provisional privileges with supervision for a period of five months and gave her notice of the decision on January 22, 1991.

At the end of the five month period, the credential committee decided to extend Randall's provisional practice for another month, but notified Randall that they would meet again sometime after June 21, 1991 to evaluate her status.[2] On June 25, 1991, Major Michael Kidd, M.D., former Chief of Anesthesiology at Womack, recommended that Randall receive full clinical privileges, but he expressed some concern over his recommendation because of his lack of opportunity to observe Randall during complex cases. Despite this endorsement, the committee met again on July 11, 1991 and decided to limit Randall's practice due to her "inability to practice as an independent anesthesiologist." The committee recommended that Randall be limited to practicing simple anesthetics without supervision and restricted her ability to perform more complex cases. Once approved by the Commander, this action would be considered adverse and therefore reportable to the National Practitioner Data Bank.

Randall did not receive notice prior to the meeting, but did receive notice of the recommendation and was informed that she could challenge the recommendation at a hearing. She requested a hearing which was set for August 13, 1991. The notice stated in part:

---

1. Because Randall was transferred from another duty station, Army practice is to extend provisional privileges for one year. Army Regulation 40–68, 4–2(a)(4).

2. Randall tendered her resignation on May 1, 1991, which did not become effective until August 22, 1991.

The credentials committee will hold the hearing on August 13, 1991 at 0830 hours ... You have the right to be present, to present evidence and call witnesses in your behalf, to cross-examine witnesses called by the committee, to consult legal counsel.... Failure to appear at the hearing will constitute a waiver of both the rights listed here and the right to appeal.

Randall acknowledged receipt of the notice and informed the committee that she would attend the hearing along with her attorney. Randall requested an extension which was granted and the hearing was rescheduled for August 26, notice of which was sent to Randall on August 9. Her attorney was notified on August 22, but neither Randall nor her attorney appeared on the 26th for the hearing. The hearing was again rescheduled, this time for September 9 and notice was sent to Randall, which she says she did not receive, and to her attorney, which was received. On September 9, 1991 neither Randall nor her attorney appeared. The committee rescheduled the hearing, setting September 27 as the final date, and gave Randall notice by hand delivery on the 26th. Randall responded that since she had recently left the Army, "my schedule is not flexible enough to allow me to attend your hearing without compensation." Randall did not show for the last scheduled hearing.

On September 27, 1991, the committee met and recommended that her privileges be limited and that their recommendation be forwarded to the Commander for final approval.[3] At the hearing, evidence was offered that Randall had trouble handling instructions, had completed a report for a procedure that never occurred, and showed poor judgment on a number of crucial occasions. One of Randall's supervisors, Dr. Kidd, testified that Randall had committed numerous instances of faulty judgment, and that Randall's knowledge and clinical skills were no better than those of a first year medical

student and below 90 to 95 percent of the nurse anesthetists at Womack. On March 23, 1992, the Army submitted the following instruction on Randall to the National Practitioner Data Base: "Restriction of clinical privileges Incompetence."[4] Randall brought this action against the United States and Colonel Kevin C. Kiley and Colonel Elmer M. Casey, in their official and individual capacities, alleging deprivations of her substantive due process rights by the limitations placed on her practice and the report to the National Practitioner Data Bank. Second, she claimed she was denied procedural due process by the committee's failure to provide her notice of the July 11 hearing, denial of opportunity to attend the July 11 hearing and present witnesses, and denial of representation of counsel at the August 13 hearing. Third, she alleged money damages against the individual defendants.

Defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) for Randall's failure to make out a claim under which relief may be granted. Defendants argued that Randall had failed to establish a constitutional violation as required by *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Defendants argued that Randall was afforded adequate process throughout the administrative hearings. Further, defendants argued that the individual defendants enjoyed qualified immunity for three separate reasons: (1) Randall failed to make out a constitutional violation, (2) superior officers enjoy immunity from suit from inferior officers, and (3) federal statutory law protects individuals who participate in the creation of medical quality assurance records from suit.

The district court granted the motion, finding first that Randall had failed to establish a violation of a Constitutional right as mandated by *Siegert*. The court found that Randall's voluntary resignation and the Army's refusal to extend her limited privi-

---

**3.** Practitioners who separate from the Army prior to resolution of their appeal are notified that the process will be completed as though they were still on active duty. AR 40–68 4–10(4).

**4.** Later, the Army's Office of the Surgeon General issued a new adverse action report that re-

placed the language of the first report with the following: "Practitioner failed to demonstrate the clinical ability or knowledge to practice anesthesiology without supervision for patients rated ASA Classes 3–5."

leges did not result in a deprivation of property. The court also found that Randall's liberty interests, which she argued had been violated through "foreclosures from other employment opportunity resulting from injury to one's reputation" did not establish a violation of a recognized constitutional right. Further, the court concluded that Randall's failure to participate in the Army's hearing process precluded her from challenging the merits of the Army's decision as well as the process afforded her. Finally, the court found that the individual defendants were immune from suit on three grounds: (1) Randall had failed to make out a constitutional violation, (2) under *Chappell v. Wallace*, 462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983), "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations[ ]" and (3) under 10 U.S.C. § 1102(g), a person who provides information or participates in reviewing a practitioner's medical quality assurance records shall not be civilly liable for such participation.

## II.

▆ We review *de novo* the district court's dismissal of a complaint for failure to state a claim upon which relief may be granted. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). A motion to dismiss should not be granted unless the plaintiff can prove no set of facts to support the claim and entitle the plaintiff to relief. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In reviewing the legal sufficiency of the complaint, this court must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff. *Id.* However, we are not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Schatz*, 943 F.2d at 489.

### A. *Substantive Due Process*

▆ The government's plea of qualified immunity is grounded upon Randall's failure to set forth a constitutional deprivation in her complaint. Once a defendant has pleaded qualified immunity from suit, the courts should, at the pleading stage, clearly determine whether the plaintiff had an existing constitutional right at the time the defendant acted. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

▆ Randall asserts that she has a property interest in retaining her commission. Randall had only provisional privileges at Womack, and the Army has not affected that interest by refusing to extend to her full privileges. *See Shahawy v. Harrison*, 778 F.2d 636, 642–43 (11th Cir.1985) (physician with staff privileges did not have a constitutionally protected property interest in his application for additional privileges). Furthermore, Randall voluntarily left the Army and thereby abandoned any property interest she had as a practicing physician at Womack.

▆ The facts of the case do not merit a finding that Randall's liberty interest was deprived. Randall argues that the Army's adverse action report entered into the National Practitioner's Data Bank has denied her the right to practice her profession free from an imposed stigma. In *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that action which inflicts a stigma on the reputation of a plaintiff causing that plaintiff hardship in obtaining employment is harm to reputation that does not rise to the level of a constitutional deprivation. These cases control, and we conclude that Randall was not deprived of her liberty interest.

▆ Randall also argues that the hearing process violated her substantive due process rights because the Committee's recommendation was arbitrary. We agree with the district court's conclusion that Randall may not challenge the substance of a finding conducted at a hearing which she requested and then chose not to attend.

### B. *Procedural Due Process*

Although no substantive right was violated, Randall had the right to pursue her occupa-

tion free of restrictions which the Government may implement only after due process. *See Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Randall contends that the Army afforded her inadequate process throughout the proceedings. We find this contention meritless.

■ First, Randall argues that the committee's failure to provide her with reasons why it was meeting to consider her privileging status violated due process. At the hearing conducted on January 8, 1991, Randall was present and heard the evidence introduced by the Army of her substandard care and deficient understanding of the field in which she practiced. Written notice of specific charges is not required where past events or discussion have provided a physician with notice of the adverse charges. *Yashon v. Hunt,* 825 F.2d 1016, 1025 (6th Cir. 1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988).

■ Second, Randall argues that she was denied procedural due process by not being allowed to attend the July 11 hearing. At the July 11 hearing, the committee issued a recommendation to place limitations on Randall's practice. At the next hearing, Randall was to have the opportunity to contest the recommendation and present evidence. She was given proper notice of this hearing on four separate occasions, failed to show for unexplained reasons at the first two hearings, and then failed to appear at the final hearing claiming an inflexible schedule. By failing to appear at the final scheduled hearing, Randall is now foreclosed from objecting to the process afforded her. *See* AR 40–68 ("Failure to request a hearing or failure to appear at the hearing, absent good cause, constitutes waiver of the hearing and appeal rights.").

■ Third, Randall claims that she was denied representation of counsel. Army regulation 40–68 permits counsel to advise the practitioner but not to participate directly at the hearing. Courts have held in situations similar to the Army's credentials committee's hearing that due process is satisfied by counsel's presence, without formal representation, at a hearing. *See Woodbury v. McKinnon,* 447 F.2d 839, 844 (5th Cir.1971). *See also Yashon,* 825 F.2d at 1026 (no constitutional right to counsel at proceedings held to evaluate a physician's application for membership on a hospital's staff). Randall's due process rights were not violated by the Army's regulation which permits counsel to be present and advise the client but not to question witnesses or present argument at a credentials committee's hearing.

### III.

We find the individual defendants are qualifiedly immune from suit based on Randall's failure to establish a constitutional violation and 10 U.S.C. § 1102(g), which grants civil immunity to a person who provides information for or participates in the review of a practitioner's medical quality assurance records. While the district court also applied *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), to bar Randall's suit against the individual defendants, we think our holding in *Mickens v. United States,* 760 F.2d 539, 540 (4th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 889, 88 L.Ed.2d 923 (1986), is more germane to the immediate case, since *Mickens* established that superior officers are immune from suit brought by subordinate officers.

### IV.

For the reasons given, the district court's order is

*AFFIRMED.*