UNITED STATES of America,

v.

Eloy HERNANDEZ–BAUTISTA, Prudencio Garcia–Rodriguez, Amado Ochoa–Bernal, Jesus Gutierrez–Guzman, Jose Gutierrez–Guzman, Jesus Ornelas–Yanez, Defendants.

No. P–01–CR–103.

United States District Court,
W.D. Texas,
Pecos Division.

July 2, 2001.

James J. Miller, Jr., Assistant U.S. Attorney, Alpine, TX, for the Government.

Adrian A. Chavez, Odessa, TX, for Elroy Hernandez–Bautista

John Parras, Houston, TX, for Prudencio Garcia–Rodriguez.

Matt Hennessy, Houston, TX, for Amado Ochoa–Bernal.

Rod Ponton, III, Marfa, TX, for Jesus Gutierrez–Guzman.

Dick DeGuerin, Houston, TX, for Jose Gutierrez–Guzman.

Don Ervin, Houston, TX, for Jesus Ornelas–Yanez.

## ORDER GRANTING JUDGMENT OF ACQUITTAL

FURGESON, District Judge.

On June 22, 2001, this Court granted Defendants' Motion for a Rule 29 Judgment of Acquittal, in the above-styled case. The Court now issues this written order to explicate its ruling.

## BACKGROUND

The above-styled case was tried to jury during the week of June 18, 2001, in Pecos, Texas. Defendants were charged, in a two-count superseding indictment, with possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and involving a person under the age of eighteen in that criminal enterprise, in violation of 21 U.S.C. § 861(a)(2). The child-use conduct charge was dismissed at the close of the Government's case, because the official government file contained three birth dates for the alleged minor, one of which placed his age at eighteen.

A brief sketch of the trial would be helpful at this point. On March 5, 2001, shortly before midnight, Border Patrol agents responded to a vehicle sensor alert on Chispa Road, south of Van Horn, Texas. Chispa Road is a well-known artery for drug smugglers and illegal entrants. Driving south down Chispa Road, the Border Patrol agents encountered a pickup truck driving north. The agents stopped the truck for an immigration inspection. The truck was driven by Defendant Hernandez–Bautista, who told the agents that he had been fishing with friends at the river. He also said he had left another pickup further south on Chispa Road, because of a flat tire. The Border Patrol agents searched Hernandez–Bautista's truck, but found nothing. They then continued south on the road and came across the second truck, which did indeed have a flat tire. The agents noticed footprints near the truck, followed the footprints for some distance, continued in the general direction where the footprints were heading, and eventually found several duffel bags containing marijuana. Around the bags, the agents again found footprints similar to the ones around the pickup truck.

At that time the agents, using night vision glasses, scanned the landscape and saw six people hurrying south, back towards the river. The agents went after the people and finally, nearly three miles from the marijuana and about one and a half hours after finding the pickup with the flat tire, arrested five of the Defendants in this case, plus a younger brother to one of the Defendants, who was returned to Mexico. The footprints that the agents found near the pickup truck and the marijuana were similar to the tread on the soles of some of the five Defendants' shoes. However, the Border Patrol agents acknowledged that the area had an extremely high amount of foot traffic, and that the shoes worn by the Defendants were mass produced and quite common in the area. The agents took the men into custody and noticed that at least some of the Defendants found in the desert had red marks on their back and shoulders, consistent with marks that would be made by carrying a bag. Defendant Hernandez–Bautista and the five Defendants found off Chispa Road were indicted together and the case proceeded to trial.

The case was complicated and hotly contested. The Government destroyed the bags containing the marijuana, and was uncertain of the location of the provisions bag that five of the Defendants were carrying. This Court did not give the adverse inference instruction requested by defense counsel, but did repeatedly admonish the Government for its failure to preserve evidence. Adding to the complications, during cross examination, the Assistant U.S. Attorney asked a witness, was it not a fact that the provisions bag was returned to Mexico with the juvenile accompanying the Defendants, who was not charged in the indictment. This unfortunate slip prompted much objection from the Defendants; this Court overruled their motion for a mistrial, but did instruct the jury that there was absolutely no evidence whatsoever in the record to substantiate the claim that the provisions bag was returned to Mexico. To the contrary, all of the Government's witnesses had already testified that they had no idea what had happened to the bag.

Five of the Defendants also sought severance from Defendant Hernandez–Bautista because of their concern that Hernandez–Bautista's statement at time of arrest raised a confrontation clause problem, under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This Court denied the request for severance, but instructed the jury that Hernandez–Bautista's statement could not in any way be considered to implicate the remaining five Defendants.

Also prominent on the list of complications was this Court's ill-advised attempt at tweaking the peremptory challenge process. This Court, at the beginning of trial, advised both sides that it would seat fourteen jurors and, at the conclusion of the trial, allow each side to strike one juror of its choosing. That juror would be told that his or her name was drawn as an alternate. While neither side objected at the time, there later arose some confusion, quite possibly caused by the Court, about exactly how the procedure was to work. When the time came to decide on the strikes, Defense counsel strenuously objected to the procedure on several grounds, including the objection that they did not have access to the jurors' service history. Upon reflection, this Court believes that its innovation was ill advised. Rule 24(c) sets out a clear and thoughtful method for the impanelment of alternate jurors. Deviation from the Rule, while probably harmless error, is disfavored. *See generally United States v. Sogomonian,* 247 F.3d 348 (2nd Cir.2001). This Court regrets its action and views its approach as a mistake. Had this Court not granted the Judgment of Acquittal, it may have declared a mistrial on this point alone.

Defendants also sought a jury view in this case. It was the contention of Defense counsel that it was nearly impossible for the five Defendants to have traversed three miles of such rough country in the dead of night in the time frame at work. Defense counsel strenuously and repeatedly argued that, without the jury view, the jury could have no real appreciation of the harshness of the terrain, and of how difficult it would be for six men to get as far as the Defendants allegedly did, in the time frame involved. This Court denied Defendants' request. For one thing, the U.S. Marshals had serious security concerns about how to conduct the view in such a remote area. Although this Court is aware that the decision to deny the request for the jury view has no logical bearing on the question of evidentiary sufficiency, it does believe that its decision to deny the view is a manifestation of a larger problem that merits, at the very least, brief discussion.

This Court tried this complicated, six defendant case in four days. It had two more trials scheduled for the next week, with juries already selected, so the matter had to be squeezed into one week, regardless of the circumstances. The jury worked eight to nine hour days; the Court and counsel worked late into the night, often past nine. While this Court did its best, under the circumstances, to afford a fair trial to all parties, in an ideal world this prosecution would have taken the better part of two weeks and would have almost certainly included a jury view. This Court regrets the simple reality that the coupling of exponentially increasing criminal filings in the border courts with thinly stretched judicial resources often results in less-than-optimal adjudication of individual cases.

At the close of trial, the jury returned a verdict of guilty as to all Defendants on the one remaining count in the indictment, possession with intent to distribute between 100 and 1000 kilograms of marijuana. After persuasive arguments from both sides, this Court granted a Judgment of Acquittal, pursuant to Federal Rule of Criminal Procedure 29(c).

## DISCUSSION

■ A court is to enter a judgement of acquittal "if the evidence is insufficient to sustain a conviction" for the offense charged. FED. R. CRIM. P. 29(a). The standard for evaluating the sufficiency of the evidence is "whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir.1995) (citations omitted). The focus of the inquiry is "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence."

*Id.* (citations omitted). The Fifth Circuit has made it clear that "the evidence need not exclude every reasonable hypothesis of innocence." *Id.* (citations omitted).

■ "However, we must reverse a conviction if the evidence construed in favor of the verdict 'gives equal nor nearly equal circumstantial support' to a theory of guilt and a theory of innocence of the crime charged." *Id.* (citations omitted). Because the standard for appellate review of a grant or denial of a judgment of acquittal is identical to the standard applied by a trial judge ruling of the motion, *see* 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 3d § 467, this Court will apply the above framework to the Defendants' Motion for Judgment of Acquittal.

■ It is the opinion of this Court that all the *admissible* evidence, viewed in the light most favorable to the verdict, gives, at best, equal circumstantial support to a theory of guilt or a theory of innocence. The entirety of the relevant evidence properly before the jury can be recounted quickly, viewing the evidence in a light most favorable to the government and the jury. A vehicle sensor was tripped. Marijuana was discovered and five of the Defendants were found huddled together, some three miles away. Some of those five Defendants had red marks on their back, consistent with the kind of marks a bag could leave (of course, the Defendants admitted to carrying the provisions bag). Defendant Hernandez–Bautista, after being stopped, stated to a Border Patrol agent that he was fishing with some friends at the river. The Court instructed the jury that Hernandez–Bautista's statement could not be considered to implicate the other five Defendants in any way.

The jury was also presented evidence that Border Patrol agents, using infrared night vision glasses, saw six people hurrying south across the rough terrain. Final-

ly, the Government put on evidence that the Border Patrol agents found footprints leading away from Defendant Hernandez–Bautista's truck, that similar footprints were found around the bags of marijuana, and that these footprints were similar to the tread pattern on the soles of the shoes of some of the five Defendants. The footprint testimony was the focus of much debate. This Court instructed the jury that the Border Patrol tracker was not an expert witness and could say nothing more than that there were footprints near the truck, footprints near the marijuana, and that those footprints were similar to ones that could have been left by the Defendants' shoes. This was especially required in light of the testimony from the same Border Patrol tracker that he had seen literally thousands of these similar tread patterns during his entire twenty-two year history as an agent in the Chispa Road area.

## CONCLUSION

It is the opinion of this Court that, despite all its instructions to the contrary, the jury must have based its verdict on a consideration of evidence that was not properly before it. Specifically, the jury must have had a surer belief in the similarity of the footprints than the evidence would permit. It is the further opinion of this Court that the totality of the evidence in the case, especially the footprint testimony, gives equal circumstantial support to a theory of guilt and a theory of innocence of the crime of possession of marijuana with intent to distribute. To put it another way, what was essentially presented by the Government was proof of proximity. Yet, proof of proximity is not proof of guilt. Accordingly, pursuant to Rule 29 and applicable Fifth Circuit precedent, this Court granted the Defendants' Motion for Judgment of Acquittal.

Before closing, this Court must express its appreciation to the men and women of the jury who worked so diligently under such difficult circumstances to reach a verdict in this case. They came from all over the 12,000 square miles of the Pecos Division to serve the cause of justice. Without question, they did their absolute best to do their duty. The Court's decision here is not a criticism of the jury. It reflects, instead, the Court's concern with its own handling of the case, as set out above.