United States v. Hilts

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand and eighteen.

Present:    PETER W. HALL,
            GERARD E. LYNCH,
                    *Circuit Judges*,
            PAUL G. GARDEPHE,
                    *District Judge.**

---

United States of America,

      *Appellee*,

v.                                                                          17-2998-cr

William Hilts,

      *Defendant-Appellant*.

---

*For Appellee*:              Wayne A. Myers, Carina H. Schoenberger, Assistant United States Attorneys, *for* Grant C.

---

* Paul G. Gardephe, United States District Judge for the Southern District of New York, sitting by designation.

Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY.

*For Appellant*: Danielle Neroni Reilly, Law Offices of Danielle Neroni, Albany, NY.

Appeal from a judgment entered September 22, 2017, in the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant William Hilts appeals from a judgment of conviction entered following a jury verdict finding him guilty of one count of conspiracy to distribute heroin and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B), and (b)(1)(C), and of three counts of distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). We assume the parties' familiarity with the underlying facts, the procedural history, the arguments presented on appeal, and the district court's rulings.

Hilts makes four general arguments on appeal: first, that the district court erred in the order in which it called up an alternate juror to replace a dismissed juror; second, that the district court should have granted Hilts's motion to dismiss two counts of the indictment based on prosecutorial misconduct; third, that prosecutorial misconduct during trial deprived him of a fair trial; and fourth, that the government's evidence was insufficient to convict Hilts of conspiracy to distribute narcotics.

### I. The Alternate Juror

Hilts asserts that the district court erroneously replaced a dismissed juror with Alternate Juror Number One ("Alternate One") instead of Alternate Juror Number Two ("Alternate Two"), whom, Hilts argued, was "chosen first." App. 1006; Fed. R. Crim. P. 24(c)(2)(B) ("Alternate jurors replace jurors in the same sequence in which the alternates were selected."). Rule 24(c) does not define "selected," and Hilts offers no authority for the proposition that Alternate Two was selected first when both jurors were subject to voir dire simultaneously—with the final question directed to Alternate Two—and sworn in at the same time. App. 204–28.

Even assuming that the court departed from Rule 24(c), any error was harmless. *See United States v. Sogomonian*, 247 F.3d 348, 353 (2d Cir. 2011) (*per curiam*). "Absent a showing of prejudice," Rule 24(c) violations do not require reversal. *United States v. Jones*, 763 F.2d 518, 523 (2d Cir. 1985). We have rejected arguments "that [a] conviction should be overturned because of the district court's failure to adhere to the letter" of Rule 24(c), when an appellant "failed to show that his substantial rights were affected." *Sogomonian*, 247 F.3d at 353. Hilts identifies no facts that show the selection of Alternate One—whom Hilts questioned during voir dire and whom Hilts could have challenged for cause or struck—prejudiced him. Unlike the cases Hilts cites, *see, e.g.*, *United States v. Nelson*, 277 F.3d 164, 207 (2d Cir. 2002) (finding error where "jurors' race and religion . . . motivated the district court's . . . decision to move the two chosen alternate jurors onto the main panel ahead of the non-African American, non-Jewish jurors who were next in

3

line"), nothing in the record suggests that there was any content-based reason behind the court's selection of Alternate One that could have affected the outcome of Hilts's trial.

## II.   Prosecutorial Misconduct before the Grand Jury

Hilts argues that the district court should have dismissed Counts Two and Three of his indictment[1] because prosecutors misled the grand jury into believing that a hearsay account of the DEA's investigation was actually a firsthand account. We review *de novo* a denial of a motion to dismiss an indictment. *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013).

The district court correctly denied Hilts's motion. Grand juries may indict a defendant on hearsay alone, *Costello v. United States*, 350 U.S. 359, 362–64 (1956), and the judiciary has very limited supervisory authority over a grand jury proceeding, *United States v. Williams*, 504 U.S. 36, 47 (1992). Courts may not entertain challenges attacking the sufficiency of evidence before a grand jury, and presenting such a challenge as prosecutorial misconduct does not bring it within the court's authority. *Id.* at 46–57.

Although we have noted that the grand jury must not be "misled into thinking it is getting eyewitness testimony from the agent whereas it is actually being given an account whose hearsay nature is concealed . . . ." *United States v. Liebowitz*, 420 F.2d 39, 42 (2d Cir. 1969); *see also United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972), that did not occur in this case. Here, the prosecutors identified

---

[1] Count Three charged Jones, Hilts's convicted co-conspirator, with related drug offenses. Because Count Three charges only Jones, not Hilts, Hilts's objection to it is moot, as any infirmity in the process leading to that count does not affect him.

the hearsay nature of the testimony before they presented it to the grand jury, and Hilts has not established a "violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *Williams*, 504 U.S. at 46 (quoting *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring)). And even if Hilts had identified misconduct sufficient to warrant exercise of the Court's supervisory authority, the guilty verdict at trial rendered any error in the grand jury proceeding to which Hilts objects "harmless beyond a reasonable doubt." *Mechanik*, 475 U.S. at 70.

### III. Prosecutorial Misconduct at Trial

Hilts argues that the government deprived him of a fair trial at two important junctures: first, by vouching for a confidential source ("CS") while examining the CS; and second, by continuing to vouch for and bolster witnesses and attempting to burden-shift during the government's summation. "Prosecutorial misconduct is a ground for reversal only if it causes the defendant substantial prejudice, by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (internal quotation marks, citations, and alterations omitted). To determine substantial prejudice, "we consider the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *Id.* (internal quotation marks omitted).

5

None of the prosecutor's conduct in this case warrants reversal. First, Hilts contends that the government engaged in misconduct by using the CS's cooperation agreement as a springboard to vouch for the CS's credibility. The government may only use bolstering aspects of a cooperation agreement if the defense "open[s] the door" with attacks on a witness's credibility. *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 85–86 (2d Cir. 2014). After the defense opens the door, the government may rehabilitate its witness with "truth-telling" provisions, but "prosecutors may not personally vouch for their witnesses' truthfulness." *Id.* (quoting *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005)) (internal quotation marks and alterations omitted).

Here, Hilts does not argue that the cooperation agreement was inadmissible, but that the government impermissibly vouched for the CS while introducing the agreement. Hilts highlights the following exchange during the government's redirect of the CS:

Q:  "[CS], have you complied with those conditions of [the truth telling] addendum to your plea agreement?"

[Defense counsel]: Objection.

The Court: Sustained.

A:  Yes.

Q:  So when the Judge sustains an objection, you shouldn't answer, okay, [CS]?

App. 871.[2] The government concedes that it asked an impermissible question.[3]

---

[2] Hilts objects to a second exchange but misreads or misstates the record. Hilts states that the prosecutor asked the CS, "do you understand that you *fulfilled* your obligation under the terms of the

6

Little prejudice flows from the CS's answer—"yes [I'm telling the truth]." That amounts only to a witness—whose credibility is in dispute—vouching for his own credibility, not a prosecutor "expressing his or her personal belief" as to credibility. *Carr*, 424 F.3d at 227 (alterations omitted). The jury heard the prosecutor immediately warn the CS not to answer when the court sustains an objection, and the court instructed the jury to disregard any such answer "entirely." App. 1127; *see Shareef*, 190 F.3d at 78 ("[W]e consider . . . the measures adopted to cure [misconduct].") (internal quotation marks omitted). Hilts cannot credibly claim that this question and answer caused him "substantial prejudice." *Carr*, 424 F.3d at 227.

Second, Hilts argues that prosecutors engaged in misconduct during their summations by attempting to shift the burden of proof to the defense and by continuing to vouch for the credibility of witnesses. In summation, the government may respond to defense counsel's arguments and refocus the jury on "the evidence and away from defense counsel's claims." *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992).

Hilts's primary defense theory was that the CS was lying and framed Hilts and Jones in exchange for leniency in his own narcotics prosecution. The

---

plea agreement by testifying truthfully and not by whether or not there's a conviction in this case?" Appellant's Br. at 19 (emphasis added). On the record, the prosecutor asked whether the CS understands "that you *fulfill* your obligation . . . ." App. 884–85. This is a proper question to rehabilitate a witness. *See Carr*, 424 F.3d at 228 ("[T]he district court rightly permitted the government . . . to elicit testimony about each cooperating witness's understanding of what his agreement required—specifically, to tell the truth.").

[3] We note that, in the absence of any indication of a deliberate effort to prejudice the proceeding, it is a stretch to characterize asking an objectionable question as "misconduct" rather than mere error.

7

challenged conduct arose when the government attempted to rebut this theory or defend its witness—the CS—from attacks along these lines. Hilts objected to several statements in the government's rebuttal summation as burden-shifting:

> [W]hat you didn't hear defense counsel explain is why [the CS] would swap the drugs.

App. 1194; and,

> Ya didn't hear any explanation over the course of this trial as to why [the CS] would secrete drugs in a body cavity and swap them with substances that you can plainly see on camera the defendant and his co-conspirator are providing [the CS]; there's no explanation for that. . . . Keep in mind, again, another issue that the defense didn't address, is there was heroin found inside the defendant's residence . . . . No explanation of that.

App. 1194–95. The court overruled both defense objections. *Id.*

After Hilts "open[ed] the door" for the government to respond to its theory, the prosecutor framed his rebuttal on inferences from the evidence—video evidence of Hilts's deals with the CS, ample DEA surveillance of the CS, and the presence of $8,000 in cash and drugs at Hilts's house—that undercut the defense theory. *See Rivera*, 971 F.2d at 883 ("attempt[s] to focus the jury's attention upon the evidence and away from defense counsel's claims . . . were legitimate responses to counsel's arguments that Rivera had, in essence, been framed by the cooperating witnesses and the government."). The prosecutor's argument amounted to nothing more than the contention that the frame-up theory was illogical in the absence of a reason for the CS to take unreasonable risks to accomplish it, and failed to account for the evidence found in Hilts's house. It was not burden-shifting.

8

Hilts also argues that the government continued to vouch for its witnesses and characterizes two statements as misconduct, the first in summation, the second in rebuttal:

> There's no reason . . . I submit, to discredit the evidence in this case with respect to the veracity of the search of [the CS] or the vehicle.

App. 1181; and,

> . . . when five or six people tell ya the same thing, perhaps that's because there's some truth to it.

App. 1196.

The first statement, "viewed against the entire argument to the jury," *United States v. Sheehan*, 838 F.3d 109, 128 (2d Cir. 2016), was not personal vouching for witnesses, but another attempt to focus the jury on the evidence. *Rivera*, 971 F.2d at 883. Viewed in context, the statement follows a summary of the evidence that undermines the defense theory—including extensive strip searches and ample corroborating video recordings. The use of "I submit" is not improper where the defense has "specifically attacked [a government witness's] credibility and veracity in [its] summations." *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996).

The second statement also does not offer the prosecutor's personal opinion that the government's witnesses were credible, but proposes—in response to attacks on the credibility of the CS—that the jury consider the theory that the testimony of multiple witnesses was mutually corroborating and should therefore be believed. But even if this statement improperly vouched for a witness's truthfulness, reversal would not be warranted. Because "[rebuttal] arguments frequently require

9

improvisation, courts will not lightly infer that every remark is intended to carry its most dangerous meaning." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks omitted). Viewed in light of the whole trial, and defense counsel's attempt to "impugn the integrity" of the DEA witnesses, *Eltayib*, 88 F.3d at 173, this single statement was not "egregious misconduct." *Shareef*, 190 F.3d at 78.

Moreover, even if any of the summation arguments Hilts challenges amounted to misconduct, reversal is only appropriate where the "resulting conviction [was] a denial of due process." *Id.* Weighing the "certainty of conviction in the absence of the misconduct" in light of substantial direct video and audio evidence, several corroborating witnesses, and physical evidence at Hilts's and Jones's residence, any improper statements did not impair Hilts's substantial rights. *Id.* (internal quotation marks omitted).

## IV. Sufficiency of the Evidence

Hilts challenges the sufficiency of the evidence supporting Count One: conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B), and (b)(1)(C). Although we review *de novo* a challenge to the sufficiency of the evidence, "a defendant seeking to overturn his conviction on this ground bears a heavy burden." *United States v. Snow*, 462 F.3d 55, 61 (2d Cir. 2006). "So long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction will withstand a challenge. *Id.* at 61–62. We view the evidence at trial "in its totality, not in isolation, . . . in a

10

light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government." *United States v. Anderson*, 747 F.3d 51, 59–60 (2d Cir. 2014).

Sufficient evidence supported the jury verdict. We will affirm a conspiracy conviction under 21 U.S.C. § 846 when the record supports "a rational jury's finding (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Barret*, 848 F.3d 524, 534 (2d Cir. 2017) (quoting *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008)) (internal quotation marks omitted). In a conspiracy case, "deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation." *Id.* (quoting *United States v. Morgan* 385 F.3d 196, 204 (2d Cir. 2004) (internal quotation marks omitted).

The government presented ample evidence of conspiracy. Hilts and Jones were present together during three of the controlled sales and discussed drugs and drug sales on the CS's video recordings. Hilts and Jones dealt from the same building, shared a phone number, and supplied the same drugs. And when Jones made a sale in Hilts's absence, Jones promised the CS that "of course" the drugs were the same as Hilts's. Gov't App. 7. On this record, a rational juror could find the essential elements of a conspiracy. *See, e.g., Snow*, 462 F.3d at 68 ("[W]here the government presents evidence tending to show that the defendant was present at a crime scene under circumstances that logically support an inference of association with the criminal venture, a reasonable juror could conclude the defendant was a

11

knowing and intentional criminal conspirator." (internal quotation marks omitted)).

Hilts argues that two facts—that Hilts and Jones charged different prices and that they lived in separate apartments in the same building, rather than a single unit—compel the inference that Hilts and Jones sold drugs as separate entities. At best, Hilts has identified "competing inferences," on which "we must defer to the jury's choice." *Anderson*, 747 F.3d at 60 (internal quotation marks omitted).

We have considered Hilts's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk