*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0426P (6th Cir.)
File Name: 03a0426p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

 *v.*

RUDY DELGADO, JR.
(01-2090) and EDUARDO
FLORES (02-1009),
   *Defendants-Appellants.*

Nos. 01-2090;
02-1009

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-81120—Victoria A. Roberts, District Judge.

Argued and Submitted: September 12, 2003

Decided and Filed: December 5, 2003

Before: NELSON, GIBBONS, and SUTTON, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Thomas J. Plachta, PLACHTA LAW OFFICES,
Mt. Pleasant, Michigan, for Appellant. Janet L. Parker,
ASSISTANT UNITED STATES ATTORNEY, Bay City,

---

Michigan, for Appellee. **ON BRIEF:** Thomas J. Plachta,
PLACHTA LAW OFFICES, Mt. Pleasant, Michigan, Richard
Ginsberg, Ann Arbor, Michigan, for Appellants. Janet L.
Parker, ASSISTANT UNITED STATES ATTORNEY, Bay
City, Michigan, for Appellee. Rudy Delgado, Jr., Pekin,
Illinois, pro se.

_____

## OPINION

_____

DAVID A. NELSON, Circuit Judge. The primary issue
presented in these criminal appeals is whether the district
court's method of jury selection – a method in which the
parties were required to reduce a pool of 30 qualified jurors
to a panel of 14 by using all of their peremptory challenges,
with the court then designating two alternates by random
draw immediately before the beginning of jury deliberations
– violated, to the defendants' prejudice, Rule 24 of the
Federal Rules of Criminal Procedure. We conclude that the
random designation of alternates at the end of the trial was
inconsistent with Rule 24(c), but that the violation did not
affect the defendants' substantial rights. On that basis, and
because we reject all remaining claims of prejudicial error
(with the exception of an ineffective assistance of counsel
claim that would more appropriately be raised in a collateral
proceeding), the challenged judgments will be affirmed.

I

Rudy Delgado, Jr., and Eduardo Flores were indicted on
charges of conspiracy to possess and distribute more than 500
grams of cocaine, use of communications facilities to
facilitate the distribution of cocaine, and possession and
distribution of cocaine. They were jointly tried before a jury.

The district court used a form of the "struck jury" method of jury selection.[1] After screening for cause and thereby reducing the jury pool to 30 qualified members, the district court required the government and the defense to exercise all of the peremptory strikes allowed under Rule 24(b), Fed. R. Crim. P., leaving 14 jurors.[2] The attorneys for the defendants initially misunderstood the court's procedure, believing that jury selection would be complete, even if some peremptory strikes remained unused, once the "first" 14 jurors were acceptable to both the government and the defense. When the defense attempted to "pass" a round of peremptory strikes, however, the court explained that "[n]o one of the 30 has any priority over anybody else" and that all of the parties' peremptory strikes would therefore have to be used to select a panel of 14 jurors. Mr. Delgado objected to the court's procedure, but the court overruled the objection.

The district court had informed the parties that it would use a random draw to remove two alternates from the panel of 14 just before the jury was sent to deliberate. Mr. Delgado objected to this procedure also. Joined by Mr. Flores, he moved for a mistrial on the grounds that the court's method of selecting jurors and alternates violated Rule 24 and the

---

[1] Most courts use a version of either the "struck jury" or the "jury box" method of jury selection. Under the struck jury method, "for-cause challenges are made first, until a sufficiently large panel of qualified jurors remains to fill the juror and alternate juror positions should all peremptory challenges be exercised against different jurors." *United States v. Underwood*, 122 F.3d 389, 393 n.4 (7th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998). Under the jury box method, "the parties exercise both their for-cause and peremptory challenges one juror at a time during voir dire questioning." *Id.*

[2] Rule 24(b)(2) affords the government six peremptory challenges and the defendant or defendants 10 peremptory challenges in felony cases. See Fed. R. Crim. P. 24(b). District courts "may allow additional peremptory challenges to multiple defendants," *id.*, but the court did not do so in this case.

United States Constitution. The court denied the motion but expressed a willingness to designate as alternates the "last two" jurors called. When Delgado's lawyer's definition of the "last two" jurors proved different from the government's, however, the court adhered to its plan to select alternates randomly.[3]

Mr. Delgado's attorney gave an opening statement before the government presented its case, but Mr. Flores' attorney reserved his opening until the government rested. At that time, Flores' lawyer gave a statement indicating that Flores would testify and that his testimony would paint Delgado as a drug dealer. Mr. Delgado moved for a severance at this point, citing "inconsistent defenses." The district court denied the motion.

The jury convicted the defendants of conspiracy and other offenses. Delgado was sentenced to 135 months of imprisonment, and Flores was sentenced to 27 months. Each defendant filed a timely appeal.[4]

## II

Jury selection procedures, including the manner in which peremptory challenges are exercised, are traditionally left to the discretion of the district courts. See, *e.g.*, *United States v. Mosely*, 810 F.2d 93, 96-97 (6th Cir.), *cert. denied*, 484 U.S. 841 (1987); *United States v. Morris*, 623 F.2d 145, 151 (10th

---

[3] Mr. Delgado's lawyer believed that the "last two" jurors were those sitting furthest from the first seat in the jury box when the peremptory strike process began, while the government attorney believed that the "last two" were the final two jurors called from the venire to replace prospective jurors who were excused for cause.

[4] In addition to the jury selection issues, Flores' appeal raised several issues relating to his sentence. Those issues are now moot, Flores having been released from custody.

Cir.), *cert. denied*, 449 U.S. 1065 (1980). In criminal trials, that discretion is circumscribed by Rule 24 of the Federal Rules of Criminal Procedure.[5] We must therefore decide whether the defendants were "denied any right for which Rule 24 provides." *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000).

A

We turn first to the defendants' argument that they were improperly required to use all of their peremptory challenges. Rule 24(b) prescribes the number of peremptory challenges that must be allowed in criminal trials but says nothing about the method by which such challenges are to be exercised. See *United States v. Underwood*, 122 F.3d 389, 392 (7th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998); *Morris*, 623 F.2d at 151. District courts are thus free to use any method that does not prevent defendants from intelligently exercising the challenges to which they are entitled. See *Underwood*, 122 F.3d at 392.

Here the defendants argue that the district court's chosen method – a "struck jury" system, to repeat, in which jurors were not seated in a sequence – impaired the ability of defense counsel to exercise professional judgment when using peremptory challenges. The defendants presumably wished to maximize the strategic value of their peremptory strikes by focusing on the jurors who were most likely to sit. With none of the 30 qualified jurors more likely to sit than any other, the value of any individual strike was arguably diminished.

[5] Peremptory challenges are "auxiliary" to the Sixth Amendment right to an impartial jury; they are not themselves constitutionally guaranteed. See, *e.g.*, *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000). The right to peremptory challenges in federal criminal trials is secured – and governed – by Rule 24. See *id.*

We are not persuaded that any such diminution constituted a meaningful impairment of the defendants' right to peremptory challenges. In *United States v. Martinez-Salazar*, a criminal defendant lost the strategic use of a peremptory challenge when he exercised the challenge against a juror who should have been excused for cause. See *Martinez-Salazar*, 528 U.S. at 308-09. The Supreme Court, observing that the defendant was accorded the full allotment of challenges allowed by Rule 24(b), held that his right to peremptory challenges was not impaired. See *id.* at 317. Under *Martinez-Salazar*, we believe, the inability of defendants "to make maximum strategic use of their peremptory challenges" does not invalidate a district court's method of exercising peremptories. *United States v. Patterson*, 215 F.3d 776, 779-80 (7th Cir.), *vacated in part on other grounds*, 531 U.S. 1033 (2000). The defendants must identify some other defect in the district court's procedure if they are to show that Rule 24(b) was violated.

The defendants' only other argument is that the required use of all peremptory challenges conflicts with the "historic purpose" of peremptories by forcing parties to strike jurors that they find acceptable. But the defendants were not forced to strike jurors that they preferred over the remaining jurors; they were only required to strike the jurors they perceived as least favorable. We do not think the district court's procedure was inconsistent with the "true nature of the peremptory challenge right," which is to allow the rejection (not the selection) of prospective jurors. *Mosely*, 810 F.2d at 97 (citing *Pointer v. United States*, 151 U.S. 396 (1894)). There was no impermissible impairment of the defendants' right to exercise peremptory challenges under Rule 24(b).

B

Now we turn to the district court's designation of alternates. At the time of the defendants' trial, Rule 24(c) provided that

"The court may empanel no more than 6 jurors, in addition to the regular jury, to sit as alternate jurors. An alternate juror, in the order called, shall replace a juror who becomes or is found to be unable or disqualified to perform juror duties."[6]

This provision, as we read it, assumes that alternate jurors will be designated separately – and sequentially – before the trial begins.[7]  The district court's selection of alternates by random draw just prior to jury deliberations was inconsistent with the rule.  See, *e.g.*, *United States v. Brewer*, 199 F.3d 1283, 1286-87 (11th Cir. 2000); *United States v. Love*, 134 F.3d 595, 601 (4th Cir. ), *cert. denied*, 524 U.S. 932 (1998); and *United States v. Sivils*, 960 F.2d 587, 593-94 (6th Cir.), *cert. denied*, 506 U.S. 843 (1992), in which we characterized a random draw of alternates just before the jury retired to deliberate as a "departure from Rule 24(c)."[8]

---

[6] Rule 24 was amended in 2002, but the changes to subsection (c) were "intended to be stylistic only."  Fed. R. Crim. P. 24, advisory committee notes.

[7] According to one court of appeals, Rule 24(c) "assumes that jurors will be selected either by the jury-box system or by a struck-jury method in which defendants know the sequence in which members of the pool will be seated." *United States v. Patterson*, 215 F.3d 776, 780 (7th Cir.), *vacated in part on other grounds*, 531 U.S. 1033 (2000).  We agree insofar as the selection of alternates is concerned.  The rule does not, we believe, prohibit a district court from selecting 12 regular jurors through a struck jury method in which the jurors are not put in a sequence, so long as the alternates are separately selected in a distinct order.

[8] In *United States v. Broadus*, 7 F.3d 460, 463 n.1 (6th Cir. 1993), we criticized a procedure in which alternates were selected randomly because the district court did not allow additional peremptory challenges as required by Rule 24(c).  That criticism does not apply in the case at bar, because both defendants waived the right to additional peremptory challenges.

Federal rules of procedure should not, of course, be disregarded by courts any more than by litigants.  We "encourag[e] strict adherence" to Rule 24(c).  *Sivils*, 960 F.2d at 594.  "Not every violation of Rule 24," however, "calls for reversal." *Love*, 134 F.3d at 601 (internal quotation marks omitted).  A violation of the rule constitutes reversible error only if it affected the defendant's substantial rights – *i.e.*, if it caused actual prejudice to the defendant.  Fed. R. Crim. P. 52(a); see, *e.g.*, *Brewer*, 199 F.3d at 1286-87; *Love*, 134 F.3d at 601; *Sivils*, 960 F.2d at 593.

In the case at bar, we are not persuaded that the district court's method of selecting alternates actually prejudiced the defendants. All of the prospective jurors had been passed for cause and presumably were impartial.  Further, the drawing of alternates by lot was a neutral procedure that in no way advantaged the government.[9]  *Cf. Love*, 134 F.3d at 602 (violation of Rule 24(c) that accorded the government no advantage was not prejudicial).  Mr. Delgado has asserted that the jurors drawn as alternates "were the best defense jurors," but that is nothing more than speculation – and speculation cannot support a finding of actual prejudice. See *id.* at 602-03; *Sivils*, 960 F.2d at 594.  Finally, the consensus among this and other courts of appeals is that similar violations of Rule 24(c) are harmless. See, *e.g.*, *United States v. Sogomonian*, 247 F.3d 348, 353 (2d Cir. 2001); *Brewer*, 199 F.3d at 1287; *Love*, 134 F.3d at 601-03; *United States v. Olano*, 62 F.3d 1180, 1190 n.3 (9th Cir. 1995), *cert. denied*, 519 U.S. 931 (1996); *Sivils*, 960 F.2d at 594.

---

[9] Indeed, Flores' attorney agreed at trial that "it would be better to choose the two alternates by lot at the end," given the district court's method of impaneling the jury.  Because Flores objected to the district court's method, we do not interpret this statement as a waiver of the alternates issue.

To repeat, we do not condone departures from the literal requirements of Rule 24(c). The rule "represents a national consensus of bench and bar and ought not to be disturbed." *Love*, 134 F.3d at 601 (internal quotation marks omitted). In the absence of actual prejudice to the defendants, however, there is no basis for reversal.

### III

Mr. Delgado argues that the district court abused its discretion by denying his motion for severance. Because "[f]ederal courts strongly favor joint trials," the district court's ruling is "entitled to great deference." *United States v. Breinig*, 70 F.3d 850, 852-53 (6th Cir. 1995). We are not persuaded that the district court erred.

A motion for severance should be granted if there is "'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* at 853 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). There was no such "serious risk" in this case. Delgado has not contended that the joint trial compromised any of his specific trial rights. Nor has he demonstrated that the joint trial undermined the reliability of the jury's verdict.

Delgado maintains that Mr. Flores' testimony unfairly prejudiced him. It is hard to see how, given that Flores' testimony (so far as it related to Delgado) was largely cumulative of an informant's testimony that Delgado had sold the informant cocaine. In any event, Flores' testimony would have been admissible against Delgado regardless of whether the defendants were tried separately. Under the circumstances, it does not seem to us that the denial of the motion for severance could have caused the "compelling and unfair" prejudice necessary to call the reliability of the jury's verdict into doubt. *Breinig*, 70 F.3d at 853.

### IV

Mr. Delgado is represented on appeal by his trial attorney, Thomas Plachta. We accepted a pro se brief from Mr. Delgado, however, in which he raised several issues that were not raised in the brief filed by his lawyer. One of those issues is a claim that Mr. Plachta provided constitutionally ineffective assistance at trial insofar as he failed to request certain jury instructions.

Ordinarily, a claim of ineffective assistance of counsel should be raised in a collateral proceeding so that a record can be developed on the merits of the claim. See, *e.g.*, *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). The parties suggest that the record is sufficient in this case for disposition of Delgado's claim on direct appeal. Be that as it may, an appeal in which Mr. Plachta continues to represent Mr. Delgado is not a proceeding in which we would feel comfortable deciding the claim that Mr. Plachta was ineffective. We prefer to remit the ineffective assistance claim to a proceeding under 28 U.S.C. § 2255, should Mr. Delgado choose to pursue that means of relief.

### V

None of the remaining claims raised in Mr. Delgado's pro se brief requires reversal.

### A

Mr. Delgado argues that the government violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over materials that could have been used to impeach Ronald Carboni, an informant who testified for the government. Specifically, Delgado says that transcripts of Mr. Carboni's testimony in previous trials, transcripts of Carboni's own plea and sentencing hearings, an investigative report on Carboni's drug activities, and records of government payments to

Carboni were withheld in violation of *Brady*. We are not persuaded.[10]

First, because they are records of public court proceedings, transcripts of Mr. Carboni's trial testimony, plea hearing, and sentencing hearing were available to Mr. Delgado from sources other than the prosecution. *Brady* does not apply to materials that are not "wholly within the control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999).

Second, the investigative report does not seem to have been materially inconsistent with Mr. Carboni's trial testimony. In any event, Mr. Delgado's attorney had the report during trial and could have recalled Carboni to question him about it. It follows from this that the report is not *Brady* material. See, *e.g.*, *United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000) (noting that *Brady* applies to suppressed exculpatory evidence that "was not discovered by the defendant until after trial").

Third, Mr. Delgado has not shown that the government failed to disclose any records of payments to Mr. Carboni. See *Coe*, 161 F.3d at 344 (holding that the defendant bears the burden of proving that materials were not disclosed to him).

Finally, the jury was made aware that Mr. Carboni had been convicted on drug charges and was testifying pursuant to a plea agreement with the government. Mr. Delgado's lawyer cross-examined Carboni about his plea agreement, the judgment in his criminal case, and the sentence he faced had

---

[10]It appears that Delgado raised a *Brady* claim in the district court only as to the investigative report. The district court's rejection of that claim is reviewed de novo, see, *e.g.*, *United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000), while the other aspects of his *Brady* challenge are reviewed under a "plain error" standard, see Fed. R. Crim. P. 52(b).

he not made a deal. Delgado has not explained how the materials that he argues should have been disclosed would have improved his attorney's ability to impeach Carboni and ultimately to secure an acquittal. Thus, we cannot conclude that the materials "undermine[] confidence in the outcome of the defendant's trial," as is required for a *Brady* violation. *Corrado*, 227 F.3d at 538.

B

Mr. Delgado also argues that the government violated the rule in *Giglio v. United States*, 405 U.S. 150 (1972), by failing to correct false testimony offered by Mr. Carboni. Delgado has not shown, however, that any of the testimony in question – all of which dealt with Carboni's conduct, not Delgado's – was materially false. Carboni might have downplayed his own culpable behavior, but, as noted above, the facts of Carboni's plea agreement, conviction, and sentence were made known to the jury. We do not see how any self-serving shading of testimony by Carboni could have significantly prejudiced Delgado.

C

Finally, Mr. Delgado argues that there was insufficient evidence of his having conspired with anyone to possess and distribute cocaine. He contends that the evidence showed only that he had dealings with Mr. Carboni, who, as a government informant, cannot be a conspirator. See *United States v. Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001).

Contrary to Mr. Delgado's contention, the jury heard evidence that he conspired with persons other than Mr. Carboni. Carboni testified, for example, that his first purchase of cocaine from Delgado was facilitated by Mr. Flores. Carboni also described three-way telephone calls with

Delgado and a person named "Dee,"[11] during which Delgado instructed Dee to provide Carboni with cocaine. Delgado has not shown that the evidence, taken in the light most favorable to the government, would not permit a reasonable jury to find him guilty of conspiracy. See *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

## VI

The judgments entered against Mr. Delgado and Mr. Flores are **AFFIRMED**. Mr. Delgado remains free to raise his claim of ineffective assistance of trial counsel by way of a motion under 28 U.S.C. § 2255 to vacate his sentence.

---

[11] There was testimony that Dee's full name is Daniel Cabasas.