In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2999

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSÉ MENDOZA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:04cr00083 AS—**Allen Sharp**, *Judge.*

ARGUED MAY 24, 2007—DECIDED DECEMBER 20, 2007

Before POSNER, KANNE and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury found José Mendoza guilty of distributing amphetamine in violation of 21 U.S.C. § 841(a)(1). Mendoza challenges the sufficiency of the government's evidence against him and the district court's procedure for identifying alternate jurors. He also argues that the district court erroneously presumed that a sentence within the guidelines range would be reasonable. We affirm.

## I.

The evidence presented by the government, viewed in the light most favorable to it, demonstrated the following: In

early 2004 the head of the drug unit of the Goshen, Indiana Police Department ("GPD") asked Adam Mingucha whether he could buy narcotics from Mendoza. Mingucha had previously "worked off" drug possession charges by assisting the GPD as a confidential informant in two other cases. At this time, however, there were no pending charges against Mingucha. He agreed to help because he needed the money.

Mingucha told the GPD that he knew Mendoza and that he could likely purchase a pound of either methamphetamine ("meth") or marijuana from him. When Mendoza came into the auto repair shop where Mingucha worked in February 2004, Mingucha asked if he could buy a pound of meth. Mendoza responded that it would take a couple of weeks. Two weeks later Mendoza called Mingucha to tell him the meth was ready and at that time they agreed on a price of $5,500. Mingucha then informed the GPD of the pending sale.

The "pickup" was scheduled for March 5, 2004. Mingucha first met with GPD officers and a special agent from the Drug Enforcement Agency ("DEA") in the parking lot of a doctor's office. The officers searched Mingucha and his car, and gave him a hidden recording device and $5,500 cash. Mingucha then called Mendoza to tell him he had the money and was ready to make the purchase. Mendoza instructed Mingucha to meet him at a house. While en route, Mendoza called again and changed the meeting place to a gas station. Police followed Mingucha at a distance, observing him at all times.

Mendoza and Mingucha met at the gas station and Mendoza instructed Mingucha to follow him in his car, without revealing the destination. Mingucha then followed Mendoza to the parking lot of a grocery store. Mendoza arrived first and parked on one side of the building; Mingucha parked on the opposite side. The

contingent of law enforcement officers following Mingucha parked in various places, but none of them individually could see the entirety of what followed. Mendoza walked up to the driver's side of Mingucha's car and Mingucha handed him $5,500 cash through the window. Mendoza then told Mingucha to drive to the other side of the store where he had parked. Mingucha did so and parked alongside a red Jeep that had its hood up. Mendoza came around from the front of the Jeep and entered Mingucha's car on the passenger side, sat down, and placed a package on the seat.

After Mendoza got out of the car, Mingucha drove directly back to the doctor's office to meet with the GPD. The officers searched Mingucha and his car again, finding nothing other than the package and the absence of the money. The DEA agent sent the package to a DEA laboratory where a chemist found that it was a mixture containing 16%, or 73.7g, amphetamine.

At the beginning of his trial on the charge of distributing amphetamine in violation of 21 U.S.C. § 841(a)(1), the district court informed counsel that it intended to select 16 tentative jurors to hear the evidence and, after closing arguments, designate four at random to be the alternates. During voir dire, the district court noted that this system "seems to work very well for everybody, and it has been in use here for close to 25 years." The procedure, however, happened to result in the clerk randomly designating the one Hispanic among the 16 tentative jurors as an alternate juror. The jury then found Mendoza guilty. Mendoza filed motions for judgment of acquittal and for a new trial under Federal Rules of Criminal Procedure 29 and 33, and the district court denied both motions.

The district court filed a sentencing memorandum and held a sentencing hearing in July 2006. Although the memorandum did not suggest that the district court

presumed a sentence within the guidelines range would be reasonable, at the hearing the district court said the following about the presumptive effect of the guidelines:

> There is a discussion presented by the able defense counsel and one that this court must work through under the current status of the law, and that is the consideration of the case, not only under the Guidelines, which are presumptively correct, but also under the statute under [*sic*] 18 U.S. Code Section 3553(a).

The district court sentenced Mendoza to 135 months' imprisonment, a sentence at the bottom of the guidelines range. Mendoza timely appeals both his conviction and sentence.

## II.

### A.

Mendoza first argues that the evidence against him is insufficient to prove that he knowingly or intentionally distributed a controlled substance in violation of 21 U.S.C. § 841(a)(1). In order to prove Mendoza was guilty of distribution of amphetamine, the government had to show that Mendoza distributed amphetamine to a third party, that he did so knowingly and intentionally, and that he knew he was distributing a controlled substance. *See United States v. King*, 356 F.3d 774, 779 (7th Cir. 2004). We review challenges to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Sachsenmaier*, 491 F.3d 680, 683 (7th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This "highly deferential standard," *United States v. Womack*, 496 F.3d 791, 794 (7th Cir. 2007), is "nearly

insurmountable," *United States v. Hale*, 448 F.3d 971, 982 (7th Cir. 2006).

There is sufficient evidence to sustain Mendoza's conviction. As to the first two elements, whether Mendoza knowingly and intentionally distributed amphetamine, the evidence easily surpasses the sufficiency standard. Mendoza negotiated a price at which he was willing to supply "meth" to Mingucha; he went to the agreed-upon place for the drug sale; and after receiving the negotiated amount of money for the drug, he personally placed in Mingucha's car a package that actually contained amphetamine. As for the third element, whether Mendoza knew the package contained a controlled substance, a reasonable jury could infer that he did. After agreeing to sell Mingucha "meth," Mendoza required Mingucha to go through an elaborate and secretive procedure before furnishing it, from which the jury could rationally infer that Mendoza wished to avoid attracting the attention of the authorities. The jury was therefore entitled to conclude that Mendoza knew he was giving Mingucha a controlled substance.

**B.**

Mendoza next challenges the district court's practice of seating 16 jurors to hear the evidence presented and randomly selecting four individuals to be alternates after the presentation of evidence. Although we disapprove of this procedure, the error was harmless.

Federal Rule of Criminal Procedure 24 governs the selection of jurors and alternates in criminal trials. This rule provides in pertinent part that the court may impanel alternate jurors who are identified as such and who replace jurors in the order the alternates are selected:

(c) Alternate Jurors.

> (1) In General. The court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties.
>
> (2) Procedure.
>
>> (A) Alternate jurors must have the same qualifications and be selected and sworn in the same manner as any other juror.
>>
>> (B) Alternate jurors replace jurors in the same sequence in which the alternates were selected. An alternate juror who replaces a juror has the same authority as the other jurors.

Fed. R. Crim. P. 24(c). We have said that Rule 24(c) contemplates selection of alternates "either by the jury-box system or by a struck-jury method in which defendants know the sequence in which members of the pool will be seated." *United States v. Patterson*, 215 F.3d 776, 780 (7th Cir. 2000), *vacated on other grounds*, 531 U.S. 1033 (2000).

Rather than seating the jury and alternates separately, the district court seated 16 tentative jurors with the intention of randomly naming four of them as alternates just prior to deliberations. There may well be benefits to selecting a jury in this manner. For example, all 16 tentative jurors may be more likely to devote their full attention to the evidence presented given the likelihood that they will not be selected as an alternate. If an alternate replaces a juror during deliberations, the collective knowledge of the newly constituted jury would be less likely to suffer.

But this is not the procedure prescribed by Rule 24, nor is this a matter entrusted to the sound discretion of the district court. *See United States v. Delgado*, 350 F.3d 520,

524 (6th Cir. 2003) (noting compliance with Rule 24 is exception to district court discretion in jury selection). Rule 24 assumes alternates will be selected separately and sequentially prior to the presentation of evidence and provides for additional peremptory challenges for the parties to use specifically against potential alternates. By delaying the identification of the alternates until after the parties presented evidence, the district court erred. *See Delgado*, 350 F.3d at 525; *United States v. Sogomonian*, 247 F.3d 348, 352-53 (2d Cir. 2001); *United States v. Brewer*, 199 F.3d 1283, 1287 (11th Cir. 2000); *United States v. Love*, 134 F.3d 595, 601 (4th Cir. 1998); *United States v. Olano*, 62 F.3d 1180, 1190 n.3 (9th Cir. 1995). As a result, Mendoza was unable to exercise peremptory challenges specifically against alternate jurors. *See* Fed. R. Crim. P. 24(c)(4). Notwithstanding the logic of this practice and its vintage in the district court, we must join with our sister circuits in "encouraging strict adherence" to the rule, and we now request that the district court discontinue its current practice. *Delgado*, 350 F.3d at 525; *Love*, 134 F.3d at 601 (quoting *United States v. Sivils*, 960 F.2d 587, 594 (6th Cir. 1992)).

Deviation from the commands of Rule 24 requires reversal only if the error affects the defendant's substantial rights. *See* Fed. R. Crim. P. 52(a). We held in *Patterson* that generally the loss of a peremptory challenge does not constitute the deprivation of a substantial right. *See Patterson*, 215 F.3d at 781-82. Only if the loss has a "substantial and injurious effect or influence in determining the jury's verdict" does the loss of a peremptory challenge amount to reversible error. *Id.* at 782 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Because peremptory challenges exist principally to safeguard the Sixth Amendment's guarantee of trial by an impartial jury, *see United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000); *see also Patterson*, 215 F.3d at

779, to prevail, Mendoza must demonstrate that the jury was not impartial.

Mendoza complains that the district court's procedure excluded the only Hispanic among the 16 tentative jurors and that because this juror was among the first 12 seated, he expected to "try the case" to this juror (despite the district court's warning about the procedure for selecting alternates). But as long as Hispanics were not systematically excluded from the venire (and Mendoza does not claim they were), there is no constitutional injury. *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001). Furthermore, Mendoza is not entitled to any Hispanics on the jury, *see Taylor v. Louisiana*, 419 U.S. 522, 538 (1975), nor by implication is he entitled to any one individual juror. Finally, Mendoza presents no evidence (other than the fact of conviction, which is insufficient) to suggest that the jury was not impartial. The error was therefore harmless.

## C.

Mendoza's final contention is that the district court erroneously presumed that it should impose a sentence within the guidelines range. Whether the district court followed the proper procedures after *United States v. Booker*, 543 U.S. 220 (2005), in imposing sentence is a question of law we review *de novo*. *United States v. Tyra*, 454 F.3d 686, 687 (7th Cir. 2006).

The district court began its sentencing memorandum by noting that "based on its own discretion, this is the appropriate sentence in this case." The court noted correctly that it must first calculate the appropriate guidelines range, *see United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2006), and then decide whether to impose a sentence within the range or outside of it. In deciding

what sentence to impose, the district court properly looked to the factors enumerated in 18 U.S.C. § 3553(a). *See United States v. Dean*, 414 F.3d 725, 729-30 (7th Cir. 2005). It then determined that "[r]ecognizing the discretion afforded to this Court by *Booker* and its progeny, this Court declines to impose a non-guideline sentence." At no point in evaluating whether to impose a guidelines sentence did the district court suggest in its sentencing memorandum that it should presumptively impose one. When read as a whole, the district court's sentencing memorandum reveals that it followed the proper procedure in imposing sentence.

But that is not all the district court said. Mendoza points to the district court's oral statements at the sentencing hearing such as the "discussion presented by the able defense counsel . . . that is the consideration of the case, not only under the Guidelines, which are presumptively correct, but also under the statute under [*sic*] 18 U.S. Code Section 3553(a)." Mendoza argues that this statement also demonstrates the district court believed a sentence within the guidelines range was presumptively reasonable.

Although we recognize that the district court did not have the benefit of the Supreme Court's decision in *Rita v. United States*, 127 S. Ct. 2456 (2007), at the time of sentencing, taken at face value, the statement that in the district court guideline sentences are "presumptively correct" is wrong. Only at the appellate level is a sentence within the guidelines presumptively reasonable. *Rita,* 127 S. Ct. at 2465. District courts are required to sentence defendants without any preference for or against a sentence within the guidelines. *Sachsenmaier*, 491 F.3d at 685.

But we do not view this oral statement as indicating that the district court sentenced Mendoza under the

mistaken belief that a sentence within the guidelines is presumptively correct. First, the district court's oral statement merely characterized the "discussion presented by able defense counsel." The district court said several times that its views were contained in the written memorandum and that its oral statements were only a summary. Moreover, a sentencing memorandum is usually a better memorialization of the road taken by the district court in arriving at an appropriate sentence than oral statements made during the sentencing hearing. In addition to facilitating review, one of the reasons judges are called upon to write is the salutary effect that writing has upon precise and logical thinking. *See* Richard A. Posner, *Judges' Writing Styles (And Do They Matter?)* 62 U. Chi. L. Rev. 1421, 1447-48 (1995). For these reasons we have often said that a writing is the preferred method for making findings of relevant conduct. *United States v. Ortiz*, 431 F.3d 1035, 1042-43 (7th Cir. 2005); *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005); *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir. 1991). Under these circumstances, we conclude that the written reasons in the sentencing memorandum reflect the district court's rationale in selecting a sentence and that they constitute the "actual reasons given" for the sentence imposed. *See United States v. Ross*, 501 F.3d 851, 854 (7th Cir. 2007). As there is no indication in the sentencing memorandum that the district court presumed that a sentence within the guidelines range would be reasonable, we find no error in the district court's imposition of sentence.

## III.

For the reasons stated above, the judgment of the district court is Affirmed.

No. 06-2999                                                          11

A true Copy:

     Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*