**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 29, 2009
Decided July 30, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-3191

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 05 CR 471-29 |
| WILLIE SMITH, *Defendant-Appellant.* | Matthew F. Kennelly, *Judge.* |

**O R D E R**

Willie Smith was one of dozens of people snared in a wiretap investigation of a drug ring, but he was tried separately on a 14-count indictment that included charges of conspiracy, 21 U.S.C. §§ 846, 841(a)(1), possession with intent to distribute, *id.* § 841(a)(1), and use of a telephone to facilitate the drug crimes, *id.* § 843(b). After a bench trial, Smith was convicted of the three § 841(a)(1) charges and six counts of using a phone to facilitate those violations, but acquitted on the conspiracy count and the other phone counts

premised on the conspiracy.[1]  He received a below-guidelines sentence of 84 months' imprisonment.  Although Smith filed a notice of appeal, his appointed lawyers cannot find a nonfrivolous issue for appeal and seek permission to withdraw.  *See Anders v. California*, 382 U.S. 738 (1967).  Smith has not responded to counsel's submission.  *See* CIR. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Authorities obtained permission for a wiretap and began monitoring the telephone conversations of Anthony Sutton, a suspected drug dealer.  Agents soon identified Smith as one of Sutton's customers and arrested him when the investigation ended.  Smith was set to be tried with two co-defendants (with whom he had no connection), but as the trial date neared, Smith moved to sever because his attorney had became concerned about Smith's mental competency and needed time to gather information.  The government agreed to the motion, and it was granted.  Soon thereafter, the attorney was allowed to withdraw at Smith's request, and a second lawyer took up the representation.

The district court ordered an evaluation to determine whether Smith was competent to stand trial.  A psychiatrist, who personally evaluated Smith and reviewed the results of psychological tests given by other mental-health professionals, concluded that Smith was "marginally competent to stand trial with accommodations."  Although Smith has a low IQ and some resulting cognitive impairment, the psychiatrist concluded that Smith would be able to understand the nature and consequences of the criminal proceedings as long as defense counsel and the district court explained the legal concepts in simple terms and repeated the explanations until Smith understood.  Smith's new counsel did not challenge the psychiatrist's assessment, and the court concluded that the recommendations could be followed and therefore Smith's cognitive limitations did not render him incompetent to stand trial.  Before trial, Smith's second attorney moved to withdraw, and a third attorney was appointed.

At trial the government introduced evidence establishing that about three months before his arrest Smith had asked Marshall Sutton (who fathered two of Smith's grandchildren) to get him "some weight" of cocaine.  The government introduced 54 recorded telephone conversations, the first four of which were between Marshall Sutton

---

[1] The written judgment fails to note that Smith was acquitted on these counts, and instead appears to misstate that the charges were dismissed on the government's motion. The district court should amend its judgment to correct this clerical error.  *See* FED. R. CRIM. P. 36; *United States v. Bonner*, 522 F.3d 804, 808 (7th Cir. 2008).

and his uncle, Anthony Sutton, in which Marshall twice arranged for Anthony to supply Smith with 63 grams of cocaine in return for $1,250. The two Suttons, both of them testifying as government witnesses after pleading guilty, explained the content of the phone conversations and recounted their dealings with Smith. Marshall testified that he carried out the first few deliveries of cocaine to Smith but that his uncle soon took over that task. From that point on, Smith and Anthony dealt with each other directly, and most of the phone conversations admitted into evidence at trial involve the two men arranging a series of drug deals, each one for 63 grams of cocaine. A prosecution expert testified that 63 grams of powder cocaine is a distributable quantity, even when converted to crack, and that users typically buy crack in units of 0.1 gram.

Although Anthony Sutton testified that he provided only powder cocaine to Smith, the government sought to prove that Smith converted the powder into crack cocaine. As evidence, the government pointed to one recording in which Smith called Anthony to complain that the cocaine was not hardening properly into crack. The government also identified another phone call in which Smith called Anthony about buying cocaine for a third party and alluded to cooking the powder into crack before giving it to the buyer.

At the close of the evidence, the district court found that the government had proved beyond a reasonable doubt that Smith possessed cocaine for distribution on the three dates charged in the indictment and that he also used a telephone on the six listed occasions to facilitate his cocaine trafficking. But the court concluded that Smith and Anthony Sutton shared only a buyer-seller relationship and thus acquitted Smith of the conspiracy and related phone charges.

At sentencing Smith lodged no objection to the presentence report, but the government did disagree with the probation officer's assessment of the drug quantity and offered its own, lower calculation. The government and probation officer agreed that the evidence at trial established that 10 separate drugs transactions had likely taken place, each for 63 grams of powder cocaine. But the probation officer concluded that each of the three possessions charged in the indictment should be counted as crack, whereas the government took a more-cautious approach and suggested that only two of those transactions should be counted as crack because the nature of the third transaction was not spelled out by Smith in the phone recordings. The government, therefore, attributed a lower weight to the crack and suggested a total offense level of 30, two levels below the probation officer's recommendation. The district court adopted the government's calculation and, together with a criminal history category of I, arrived at a guidelines imprisonment range of 97 to 121 months. The court went below that range, however, and sentenced Smith to a total of 84 months' imprisonment.

In their *Anders* submission, counsel first consider whether Smith could challenge the district court's finding that he was competent to stand trial. We would review that determination only for clear error. *United States v. Moore*, 425 F.3d 1061, 1074 (7th Cir. 2005). A defendant is competent to stand trial as long as he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see United States v. Ewing*, 494 F.3d 607, 622 (7th Cir. 2007). And we agree with counsel that a challenge would be frivolous. Smith did not object to any part of the psychiatrist's report, and the record includes nothing suggesting that Smith did not understand the proceedings or was unable to assist counsel with his defense. *See United States v. Downs*, 123 F.3d 637, 641 (7th Cir. 1997) (concluding that district court did not commit clear error in finding defendant competent to stand trial even though psychiatrist's report "hedged somewhat" on defendant's mental condition). In fact, after Smith's first lawyer requested a competency evaluation, Smith twice received a new lawyer, both of whom had the opportunity to observe Smith's ability to assist in his defense, and neither of those lawyers brought any problems to the court's attention. *See United States v. Savage*, 505 F.3d 754, 760 (7th Cir. 2007) ("Significant weight is given to counsel's representations concerning his client's competence and counsel's failure to raise the competency issue.").

Counsel next evaluate whether Smith could challenge on hearsay grounds the government's introduction at trial of Anthony and Marshall Sutton's recorded statements. The government filed a *Santiago* proffer before trial setting forth its anticipated evidence to establish that Smith was part of a conspiracy. *See United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). Smith did not respond to the *Santiago* proffer, and the district court never explicitly ruled on whether the government had established a conspiracy by a preponderance of the evidence.

Counsel are right to call this contention frivolous. When the government moved for admission, en masse, of all 54 recordings and the corresponding transcripts, the district court asked defense counsel if he objected to the evidence, and counsel said no. The *Santiago* proffer had already put counsel on notice that the government was relying on the coconspirator exception as the basis for admission, *see* FED. R. EVID. 801(d)(2)(E), so in all likelihood we would conclude that Smith waived the hearsay issue, thus precluding appellate review. *See United States v. Irby*, 558 F.3d 651, 655 (7th Cir. 2009) (explaining distinction between waiver and forfeiture and stating that waiver, the intentional abandonment of a known right, precludes appellate review).

A slight twist, though, is that the district court ultimately acquitted Smith of conspiring with the Suttons (albeit under a beyond-a-reasonable-doubt standard rather than a preponderance standard). But that acquittal does not matter. If the issue is not waived, and if this court should agree with Smith's position that the government did not prove his participation in the conspiracy even by a preponderance, we nonetheless would conclude that the recordings and transcripts were properly admitted. Almost all of the recorded conversations are between Smith and Anthony Sutton; as for those recordings, Smith's side of the discussion is not hearsay, *see* FED. R. EVID. 801(d)(2)(A), and Anthony's statements were admissible because they provided context for Smith's, *see United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009); *United States v. Schalk*, 515 F.3d 768, 775 (7th Cir. 2008). The same holds true for the few recordings of conversations between Marshall Sutton and his uncle, all of which concerned Smith's interest in acquiring cocaine from Anthony. It was Smith's idea for Marshall to approach Anthony about selling cocaine to Smith, and thus Smith authorized Marshall's statements, *see* FED. R. EVID. 801(d)(2)(C); *Michaels v. Michaels*, 767 F.2d 1185, 1201 (7th Cir. 1985); *United States v. Reilly*, 33 F.3d 1396, 1412-13 (3d Cir. 1994), and Anthony's statements provided context for Marshall's, *see Schalk*, 515 F.3d at 775.

Counsel also contemplate challenging the sufficiency of the evidence underlying Smith's convictions, but that argument would fall flat. We would uphold Smith's convictions unless no rational trier of fact could have concluded, based on the evidence viewed in the light most favorable to the prosecution, that all of the elements of the charged crimes were proved beyond a reasonable doubt. *See United States v. Khattab*, 536 F.3d 765, 769 (7th Cir. 2008).

To convict Smith of possession with intent to distribute, 21 U.S.C. § 841(a)(1), the government had to prove that (1) Smith knowingly or intentionally possessed cocaine, (2) he intended to distribute it, and (3) he knew the substance was cocaine. *See United States v. Mendoza*, 510 F.3d 749, 752 (7th Cir. 2007). Although the government never recovered any drugs from Smith, Marshall and Anthony Sutton both testified that they sold Smith cocaine, and their testimony was corroborated by the phone calls. Additionally, an expert testified for the prosecution that 63 grams of powder cocaine was a distributable quantity, and the district court reasoned that Smith must have been dealing the cocaine because the brief times between transactions, once as short as three days, made it unlikely that he was using all of the cocaine himself.

To convict Smith of the telephone charges, 21 U.S.C. § 843(b), the prosecution had to prove that a drug offense was committed and that Smith knowingly used a telephone to commit or facilitate it. *See United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008); *United States v. McGee*, 408 F.3d 966, 985-86 (7th Cir. 2005). The prosecution proved that Smith

possessed cocaine and intended to distribute it on three particular occasions, and it introduced recordings of six telephone conversations between Anthony Sutton and Smith relating to those transactions. In five of the six conversations, Smith was either requesting another sale or arranging to meet Anthony to complete the sale. A rational factfinder could infer that these phone conversations facilitated a drug transaction. The remaining conversation occurred right after a drug deal, and Smith was complaining that the amount Anthony had given him was four grams short of the agreed-upon 63 grams. Anthony agreed to give him four more grams, and so a rational factfinder could also conclude that this phone conversation furthered Smith's possession of cocaine.

That leaves only the prison sentence as a potential source of error. Counsel assess whether there is any basis to challenge the 84-month overall term, but they conclude, and we agree, that the total offense level and criminal history score were properly calculated, and therefore it would be frivolous to challenge either of these guidelines determinations. And at sentencing, which postdated *Kimbrough v. United States*, 552 U.S. 85 (2007), Smith said nothing about the differential between the base offense levels for crimes involving crack and powder cocaine, so it would be frivolous for him to argue now that the district court failed to consider the validity of that differential in selecting his prison sentence. *See United States v. Filipiak*, 466 F.3d 582, 584 (7th Cir. 2006). Furthermore, because the term is significantly below the guidelines range, any reasonableness challenge based on its length would be frivolous. *See United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005).

Finally, counsel ponder whether Smith might have grounds to raise a claim of ineffective assistance of counsel since his lawyer at trial raised few objections to any of the government's evidence and did not call any witnesses of his own. But appellate counsel conclude that on the present record there is no basis to challenge trial counsel's performance, and we agree that Smith should reserve any such contention for postconviction proceedings where the record may be developed. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005).

Accordingly, we **GRANT** the motion to withdraw and **DISMISS** the appeal.