In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3097

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER SEIFER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-CR-19 — **J. P. Stadtmueller**, *Judge.*

ARGUED AUGUST 5, 2015 — DECIDED AUGUST 28, 2015

Before WOOD, *Chief Judge,* and BAUER and MANION, *Circuit Judges.*

PER CURIAM. Christopher Seifer was convicted of four counts of mail fraud, 18 U.S.C. § 1341, and one count of theft of government property, *id*. § 641. At Seifer's trial the district court empaneled 13 jurors without designating the alternate, who then was chosen randomly just before deliberations. The government concedes that this method of selecting the alternate violated Fed. R. Crim. P. 24(c), which requires that

alternate jurors be selected separately and sequentially be-fore the presentation of evidence. The only question on ap-peal, then, is whether Seifer, who never objected, has estab-lished that he was prejudiced by the error. Because Seifer's claim of prejudice is speculative, we affirm the judgment.

## I. Background

Seifer worked for the Bureau of Prisons at the Federal Correctional Institution in Oxford, Wisconsin. He injured his back on the job, and the Department of Labor's Office of Workers' Compensation Programs determined that he had a permanent work-related disability. This designation entitled him to reimbursement for travel expenses incurred for medi-cal treatments. To obtain reimbursement Seifer completed and submitted a form OWCP-957. A private administrator, Xerox, processed these forms and issued Seifer reimburse-ment checks for trips to health clubs and gyms, where he re-portedly was using heated pools to rehabilitate his back.

From March 2006 to October 2012, Seifer submitted more than 1,300 reimbursement claims for travel to facilities with pools. Most of these claims were false. At the Prairie Athletic Club, for example, his reimbursement forms show 858 visits between March 2006 and August 2009, yet his key card was swiped only 17 times. At another club, Adventure 212, Seifer was not a member from February through April 2011, but during those months he purportedly had traveled to the club and used the pool 37 times. Overall, Seifer netted more than $80,000 from his fraudulent travel claims.

At the final pretrial conference, the district judge ex-plained his procedure for selecting an alternate juror: "We will pick a jury of 13. If at the end of the trial all 13 jurors are

with us Mr. Seifer will randomly draw one of the jurors' names who will be designated the alternate and excused." This method of selecting the alternate had been rejected as inconsistent with Rule 24 in *United States v. Mendoza*, 510 F.3d 749, 753–54 (7th Cir. 2007), but Seifer did not object. Then on the morning of trial, the court reminded the parties that 13 jurors would be selected and their seating order determined at random by computer. That is how the court proceeded.

The government called 22 witnesses, including claims processors from Xerox and the Department of Labor, federal agents, and employees from the health clubs. Seifer testified that he was certain he went to the health clubs on the days he reported because he "would not have submitted claims if I didn't."

At the close of evidence, the district court informed the jurors that only 12 of them would deliberate. The court explained that it would designate the alternate (who then would be excused) by having Seifer draw one of their names from a box. Seifer selected juror number 11, who was excused. The other 12 jurors deliberated and found Seifer guilty on all counts, and the district court sentenced him to a total of 15 months' imprisonment, well below the guidelines range of 24 to 30 months.

## II. Analysis

On appeal Seifer argues that he must be retried because of the violation of Rule 24(c). Although Seifer acknowledges that review is for plain error (because he did not object at trial), he misunderstands the significance of that standard; in his brief Seifer argues that the government "must be able to

show that the error did not affect Mr. Seifer's substantial rights," but in fact it's the defendant's burden to establish prejudice when review is for plain error, *see United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *United States v. Baker*, 655 F.3d 677, 681 (7th Cir. 2011); *United States v. Mansoori*, 480 F.3d 514, 523 (7th Cir. 2007). Seifer asserts that he was prejudiced because, he reasons, juror number 13 may have assumed that he would be the alternate and thus paid less attention during trial than other jurors. The government counters that Seifer's claim of prejudice is speculative.

Federal Rule of Criminal Procedure 24(c) requires that an alternate juror have the same qualifications and be selected and sworn in the same manner as any other juror. *See* Fed. R. Crim. P. 24(c)(2)(A), (B). This circuit and others have interpreted Rule 24(c)(2) to require that jurors be selected before the presentation of evidence, beginning with the panel of 12 and then, separately, alternate jurors. *See United States v. Foster*, 652 F.3d 776, 781–82 (7th Cir. 2011); *United States v. Hill*, 552 F.3d 541, 544 (7th Cir. 2008); *Mendoza*, 510 F.3d at 753–54; *United States v. Merrill*, 513 F.3d 1293, 1308–09 (11th Cir. 2008); *United States v. Brown*, 510 F.3d 57, 72 (1st Cir. 2007); *United States v. Delgado*, 350 F.3d 520, 525 (6th Cir. 2003); *United States v. Sogomonian*, 247 F.3d 348, 352–53 (2d Cir. 2001). Alternates—in the order of their selection—will step in if any of the 12 jurors becomes unable to continue serving. *See United States v. Love*, 134 F.3d 595, 601 (4th Cir. 1998). In contrast, a practice of empanelling more than 12 jurors and then randomly selecting alternates from the group, as the district court did in this case, cannot be reconciled with Rule 24. The district judge did not say why he was resorting to this practice instead of complying with Rule 24, though part of the blame must rest with the gov-

ernment, whose lawyer conceded at oral argument that he had not been aware of the rule when he tried the case. In *Mendoza* we made clear that district judges do not have discretion to disregard the explicit requirements of Rule 24, and we requested that "vintage" practices like this one be discontinued. 510 F.3d at 753–54. Eight years on we should not be seeing the same error, and it is one that must end.

Nonetheless, the district court's error does not entitle Seifer to a new trial because he has not shown that his random pick of the alternate juror at the close of evidence affected his substantial rights. *See Mendoza*, 510 F.3d at 754; *Love*, 134 F.3d at 601. Seifer contends that he was prejudiced because (1) we cannot tell from the record whether the 13 names in the box were written on papers of precisely the same size; (2) the district court ignored Wis. Stat. § 565.27(2)(b)(4) by conducting a "lottery" without inspecting the "equipment" before and after the drawing; and (3) juror number 13 probably expected to be the alternate and didn't pay close attention to the evidence, thus creating an unfair jury panel. Each argument is meritless.

First, Seifer has not shown that the size of the papers used in the drawing for the alternate juror made a difference in the outcome; he does not assert that any of the 13 original jurors was biased, so he was still left with an impartial jury even if a difference in the size of the papers led him to select one particular name instead of some other. Moreover, Seifer's farfetched argument about the size of the papers is also entirely speculative; the papers themselves are not part of the record on appeal, and if they are important Seifer should have supplemented the record. *See* Fed. R. App. P. 10(e); *Morisch v. United States*, 653 F.3d 522, 530

(7th Cir. 2011); *In re Dorner*, 343 F.3d 910, 914 (7th Cir. 2003); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n.10 (7th Cir. 2003). Second, a Wisconsin statute governing lotteries is inapplicable to federal criminal proceedings, *see, e.g.*, *United States v. Bruce*, 550 F.3d 668, 673 (7th Cir. 2008); *United States v. Wilson*, 169 F.3d 418, 423–24 (7th Cir. 1999), and, anyway, it is frivolous to call the process of choosing a juror's name from a box a "lottery" within the meaning of this Wisconsin statute. Third, Seifer has not given us any reason to conclude that juror number 13 paid less attention than the other 12. Seifer speculates about the jurors' thought processes, but that will not work. *See Delgado*, 350 F.3d at 525–26; *United States v. Brewer*, 199 F.3d 1283, 1287 (11th Cir. 2000). For a new trial to be warranted, there must be a basis to believe that Seifer's jury was not impartial. *See, e.g.*, *Mendoza*, 510 F.3d at 754; *United States v. Sivils*, 960 F.2d 587, 594 (6th Cir. 1992). Seifer has not come close to meeting this burden.

### III. Conclusion

Accordingly, we AFFIRM the district court's judgment.