**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0342n.06
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Mar 29, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Booker Sanders, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, CLAY, and SUTTON, Circuit Judges.

**MERRITT, Circuit Judge.** Defendant Booker T. Sanders appeals both his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The district court applied an enhancement for attempted murder, U.S.S.G. § 2A2.1(a)(2), and sentenced Sanders to 87 months in prison followed by three years of supervised release. Defendant presents five bases for appeal. Four of the arguments in Sanders' appellate brief do not merit relief. The fifth, however, challenged the substantive reasonableness of Sanders' sentence. After Sanders' sentencing, the Supreme Court held in another case that a sentencing court errs when it lengthens a defendant's sentence to ensure that he or she receives rehabilitative treatment. *See Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011). At the sentencing hearing in this case, after noting Sanders' problems with substance abuse and mental illness, the district court declared that "a long period of incarceration

will actually be beneficial and should effect, hopefully, the changes that need to be effected to protect society." Because the district court may have improperly lengthened Sanders' sentence to promote rehabilitation, we reverse and remand for re-sentencing in light of *Tapia*. We affirm the remainder of Sanders' conviction and sentence.

## I. Background

On June 14, 2008, Sanders and another man, James Dickerson, had an argument on Dickerson's way home from work. Dickerson eventually walked away from the dispute and approached Malcolm Grant to ask him for a cigarette. A few minutes later, Sanders returned, walked up behind the two conversing men, and fired two bullets at Dickerson from ten to fifteen feet away. Grant fled the street, and Dickerson, who uses a walking cane, moved behind a car for protection. Neither bullet struck anyone. With four bullets still remaining, Defendant then turned and walked off. After the police arrived, both Dickerson and Grant identified Sanders as the man who shot at Dickerson. A search of Defendant produced a revolver with two spent rounds. The police arrested Sanders, and the prosecution charged him with one count of being a felon in possession of a firearm. At the scene, Defendant made no statements but continuously barked like a dog.

At trial, Agent Benny Allen of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified on direct that the firearm involved had traveled in interstate commerce. On cross-examination, Defense asked Agent Allen about his prior grand jury testimony in which he said that an officer had told him that Sanders had confessed to firing at Dickerson. At trial, however, Agent Allen said that he was not aware of any statement from Defendant. Agent Allen's trial opinion was based on a supplemental police report in which the drafting officer wrote that Sanders was "loud and

belligerent, yelling [that] he didn't have to say anything." Defense then asked whether Agent Allen would like to see the report to refresh his memory. After Agent Allen gave an affirmative answer, the prosecution objected that Defense had not laid a proper foundation, the report was undiscoverable, and it was hearsay. The court eventually sustained the objection and entered the report under seal for purposes of appeal.

During its deliberations, the jury asked "should *Miranda* rights be considered in our decision or lack thereof?" After a dispute between the parties, the court returned the answer: "No. There was no *Miranda* violation. This is something you cannot consider in your decision." The jury then returned a guilty verdict.

At sentencing, over defense objections, the court found that the evidence adduced at trial and the sentencing hearing was sufficient to establish by a preponderance of the evidence that Defendant intended to kill Dickerson. The judge applied the attempted murder sentencing enhancement, which brought the Base Level Offense up from 14 to 27. With Sanders' Criminal History of I, the recommended sentencing range was 70 to 87 months. The court decided that a sentence at the high end of the range was appropriate to reflect the seriousness of the crime and the fact that, despite having a Criminal History of only I, Sanders has had a lifelong exposure to the criminal system. The court was also cognizant of Sanders' past history of substance abuse and possible mental illness. The judge thought that Sanders would benefit from a longer period of incarceration and that the punishment "need[ed] to provide for the maximum period for recovery from a very addictive situation." Sanders eventually received a sentence of 87-months' imprisonment followed by three

years of supervised release. This appeal, in which Sanders raises five objections to his conviction

and sentence, followed.

## II. Discussion

### A. *Brady* Claim

First, Sanders argues on appeal that the prosecution should have turned over the supplemental

police report under *Brady* because he could have used it to impeach the testimony of Agent Allen.

We generally review the district court's *Brady* determinations *de novo*. *See United States v. Crayton*,

357 F.3d 560, 568-69 (6th Cir. 2004). If, however, the defendant has not raised the claim at trial,

we review only for "plain error." *United States v. Delgado*, 350 F.3d 520, 527 n. 10 (6th Cir. 2003).

In this case, Sanders never mentioned the word *Brady* or suggested that the prosecution should have

already given him the report. But the court did spend a substantial amount of time discussing

whether he should have access to it and ultimately entered the report under seal in order to preserve

appellate review of its admissibility. Ultimately we need not decide the proper standard of review

in this case because Sanders' *Brady* claim fails under any standard.

To make out a successful *Brady* claim,[1] the defendant must show that the withheld evidence

(1) was favorable to the defendant; (2) was suppressed by the government; and (3) resulted in

prejudice to the defendant. *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007) (citing *Strickler*

*v. Greene*, 527 U.S. 263, 281-82 (1999)). Since the sealed report contains no exculpatory evidence,

---

[1] While the prosecution is correct that the supplemental report is exempt from disclosure under both Federal Rule of Criminal Procedure 16(a)(2) and 18 U.S.C. § 3500, *Brady* may still dictate that the prosecution turn it over to the defense. *See United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988).

its only conceivable value to Sanders was for impeachment. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Sanders claims that the report was favorable because he could have used it to highlight and impeach discrepancies between Agent Allen's grand jury and trail testimony. At the former, the witness said that an officer told him that Sanders had "uttered" a statement. At trial, in contrast, the witness maintained that Sanders had refused to say anything. But because Agent Allen did not write it and its contents only reinforced his testimony at trial, the sealed report would likely have been of little value for impeaching Agent Allen. Inconsistencies in Agent Allen's grand jury testimony would have been more helpful for this purpose, and Sanders had those available to him at trial. Moreover, assuming that the sealed report was favorable, its absence at trial did not result in prejudice because there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citations omitted). Even if Sanders could have completely undermined Agent Allen's credibility, two eyewitnesses, Grant and Dickerson, identified Sanders as the shooter, and the gun recovered from Defendant corroborated their testimony. Because of the overwhelming evidence against him, Sanders cannot establish that the failure to disclose the report prejudiced him.

### B. Rule 16 violation

Second, Sanders argues that the prosecution violated Federal Rule of Criminal Procedure 16(a)(1)(A) by withholding a statement that he made.[2] At trial, the district court found no violation

---

[2]The text of Federal Rule of Criminal Procedure 16(a)(1)(A) states: "Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."

because the prosecution did not intend to use any statement at trial. We review lower court decisions on this issue for abuse of discretion. *See United States v. Muhammad*, 948 F.2d 1449, 1454 (6th Cir. 1991). On appeal, Sanders points out that in some situations the government must turn over a defendant's statements in its possession regardless of whether it intends to use the statements at trial. He is essentially claiming that there exists somewhere in the prosecution's possession a written record that contains a reference to an oral statement that Sanders made in response to custodial interrogation. *See* FED. R. CRIM. P. 16 advisory committee's (1991 amend.) note ("[Rule 16(a)(1)(A)] now requires the prosecution, upon request, to disclose any written record which contains reference to a relevant oral statement by the defendant which was in response to interrogation, without regard to whether the prosecution intends to use the statement at trial."). If such a record exists, the prosecution should have turned it over.

Little evidence exists that Sanders made any oral statement or that there is a written record making reference to it. To prove that he did make a statement, Sanders relies on Agent Allen's grand jury testimony in which he stated that Sanders admitted to firing at Dickerson "whenever they [the officers] were kind of trying to fill out all the questions . . . ." Neither of the officers at the scene remembered Sanders making a statement. Agent Allen subsequently testified at trial that, after further investigation, Sanders did not make a statement. In addition, there is no evidence that any written record referenced Sanders' alleged statement. Unless it plans to use the statement at trial, the prosecution does not have to disclose oral statements that are not referenced in a written record. *See* FED. R. CRIM. P 16(a)(1)(A). The advisory committee note, however, explains that a defendant has "some proprietary interest" in oral statements made during interrogations regardless of their

future uses. FED. R. CRIM. P. 16 advisory committee's (1991 amend.) note. But this proprietary interest does not require the prosecution to disclose the substance of oral statements that are never referenced in a writing and not intended for use at trial. *See id.* In this case, the only writing mentioned in either brief is the supplemental police report which simply observes that Defendant refused to make any statement. Because there is insufficient evidence to prove the existence of a writing in the prosecution's possession that referenced a statement made by Sanders, the district court was correct in finding no Rule 16 violation.

### C. Improper Jury Instruction

Sanders' third argument claims that the district judge erred by instructing the jury in response to its question that the police had committed no *Miranda* violations and that the jury could not consider *Miranda* rights in its decision. *See Miranda v. Arizona*, 384 U.S. 436 (1966) We review a supplemental jury instruction for abuse of discretion to determine whether it "fairly responds to the jury's inquiry without creating . . . prejudice." *United States v. Graham*, 484 F.3d 413, 419-20 (6th Cir. 2007); *United States v. Giacalone*, 588 F.2d 1158, 1166 (6th Cir. 1978). Defendant claims that there was sufficient evidence for the jury to find that a *Miranda* violation occurred and that the instruction was confusing because it did not explain why the jury could not consider *Miranda*.

Regardless of whether there was sufficient evidence to infer the existence of a *Miranda* violation, the district court's supplemental instruction was proper because the existence of a *Miranda* violation is a legal question and in the sole purview of the judge. The vehicle for a *Miranda* challenge is the motion to suppress, which a defendant must make before trial. *See* FED. R. CRIM. P. 12(b)(3)(C). In response to such a motion, the trial judge must determine the admissibility of all

evidence. FED. R. EVID. 104(a). Sanders made no such motion, and the judge did not rule on the admissibility of any statements. As a result, the lower court was entitled to instruct the jury that there was no *Miranda* violation.

Even if the instruction were inappropriate, it did not result in prejudice to Defendant. The remedy for a *Miranda* violation is to exclude the tainted statement. *See Miranda*, 384 U.S. at 492. Here, however, the prosecution never attempted to introduce any statement from Defendant. It was only during Defendant's cross examination that Agent Allen mentioned the alleged statement. At trial, had the court found a *Miranda* violation, Sanders' sole remedy would have been to exclude a statement that was never introduced. Defendant cannot hide the backwardness of what he is asking for, and simultaneously broaden the remedies available to him, by pitching a *Miranda* violation claim as one for an improper jury instruction.

D. Sufficiency of the Evidence Claim for the Attempted Murder Enhancement

Fourth, Sanders claims that the court should not have applied a cross reference for attempted murder to him–raising his Base Offense Level from 14 to 27–because there was insufficient evidence to find that he intended to kill Dickerson. We review factual findings for clear error and mixed questions of fact and law that the district court resolves at the Sentencing Hearing *de novo*. *See United States v. May*, 568 F.3d 597, 604 (6th Cir. 2009). To apply an enhancement, the trial judge must find that the defendant's conduct satisfied the definition of the cross-referenced offense by a preponderance of the evidence. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006); *United States v. Milton*, 27 F.3d 203, 206 (6th Cir. 1994). Federal law defines second degree murder as killing with malice aforethought, a mental state that includes intent to kill. *See United States v.*

*Hicks*, 389 F.3d 514, 530 (5th Cir. 2004). In this case, the court was correct to apply a Base Offense Level of 27 because Sanders attempted a killing that would not have qualified as first degree murder. *See* U.S.S.G. § 2A2.1(a)(2).

Sanders argues that, had he intended to kill Dickerson, he would have succeeded. Dickerson walks with a cane and cannot move very quickly. Despite his alleged victim's inability to escape, Sanders did not shoot Dickerson point blank. Rather he stopped ten feet short, unloaded only two of the six bullets in the gun, and did not pursue Dickerson to finish the job. Sanders swears that he only intended to scare Dickerson. The trial court heard and dismissed this excuse, finding instead "an absolute effort to shoot [Dickerson]." Dickerson testified that Sanders said "I'm going to blow your ass off" and "I told you I was going to kill you." Some evidence also suggests that the gun fell apart after Defendant fired two shots, which would undermine Sanders' theory. Finally, two witnesses testified that Sanders shot at Dickerson rather than up into the air. Cumulatively, this is ample evidence to find that Sanders attempted to kill Dickerson by a preponderance of the evidence.

E. Substantive Unreasonableness of the Sentence Claim

Sanders' final claim is that his sentence of 87-months' imprisonment, which is at the high end of the applicable range, is substantively unreasonable because the district court failed to give proper weight to mitigating factors. A sentence may be substantively unreasonable if a district judge "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors, or g[ave] an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). We review the reasonableness of a sentence for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). If the

sentence is within the guideline range, as it is here, then a reviewing court may presume it to be reasonable. *See id.* at 51.

In this case, the trial judge cited § 3553 and extensively discussed the factors it requires. The lower court's analysis focuses on the seriousness of the crime, the danger it poses to public safety, and the need to deter future perpetrators. Sanders also has an extensive criminal past that his Criminal History Category of I underrepresents. These factors by themselves may justify the sentence that the district court selected.

But the district court also concluded that, because of Sanders' long history of substance abuse and possible mental illness, he would benefit from a long period of incarceration and needed maximum time to recover from an addictive situation. These statements suggest that the court below may have imposed the 87-month sentence, in part, to ensure that Sanders had time to receive proper rehabilitative treatment. *Tapia v. United States* denies a sentencing judge this option. *See* 131 S.Ct. 2382, 2391 (2011). While a sentencing judge may discuss a defendant's need for treatment and even recommend that the Bureau of Prisons prescribe a specific program, 18 U.S.C. § 3582(a)[3] prohibits either imposing a term of incarceration or lengthening its duration because of rehabilitative concerns. *See Tapia*, 131 S.Ct. at 2392-93. It is not completely clear that the district court in this case lengthened Sanders' sentence to ensure his rehabilitation. The judgment, for example, only recommends treatment when Sanders is under supervised release, after his incarceration has ended. Nonetheless, the judge's statements at sentencing suggest that he "may have calculated the length

---

[3] Specifically 18 U.S.C. § 3582(a) instructs a sentencing court to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."

of [the] sentence to ensure that [the defendant] receive certain rehabilitative services." *Id. But see United States v. Tolbert*, No. 10–6467, 2012 WL 413806, at *5 (6th Cir. Feb. 10, 2012) ("While the district court did allude to [the defendant's] mental health issues and conclude that he would benefit from treatment, we find that the district court did not impermissibly impose or lengthen [the defendant's] sentence to enable him to complete a treatment program or promote his rehabilitation."). In this case, a remand is warranted to reduce confusion and ensure correctness.

Accordingly, we affirm the district court's judgment in part and reverse and remand it in part for reconsideration of Sanders' sentence in light of *Tapia v. United States*.